1   David Parisi (SBN 162248)
    dcparisi@parisihavens.com
2   Parisi & Havens LLP
3   15233 Valleyheart Drive
    Sherman Oaks, California 91403
4   Telephone:   (818) 990-1299

5
    Joseph H. Malley (not admitted)
6   malleylaw@gmail.com
7   Law Office of Joseph H. Malley
    1045 North Zang Blvd
8   Dallas, TX 75208
    Telephone: (214) 943-6100
9

10  *Counsel for Plaintiffs*

11          **IN THE UNITED STATES DISTRICT COURT**

12
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13

14  GENEVIVE LA COURT; DEIRDRE          CASE No. **SACV10-01256 JVS VBKx**
15  HARRIS; CAHILL HOOKER; BILL
    LATHROP; JUDY STOUGH; and E.H., a   **JURY DEMAND**
16  minor, by and through her parent, JEFF
17  HALL; individuals, on behalf of themselves   **CLASS ACTION**
    and others similarly situated,       **COMPLAINT FOR:**
18
19                    Plaintiffs,         1. Violation of Computer
20  v.                                       Fraud and Abuse Act, 18
                                             U.S.C.  § 1030;
21  SPECIFIC MEDIA, INC.,  a Delaware
    Corporation;                          2. Violation of California's
22                                           Computer Crime Law,
23                    Defendants.            Penal Code § 502;
24
                                          3. Violation of California's
25                                           Invasion Of Privacy Act,
                                             California Penal Code §
26                                           630;
27
                                          4. Violation of California's
28

Consumer Legal Remedies
Act, Civil Code § 1750;

5. Violation of California's
   Unfair Competition Law,
   Business and Professions
   Code § 17200;

6. Trespass to Personal
   Property / Chattels

7. Unjust Enrichment

Plaintiffs Genevieve La Court, Deirdre Harris, Cahill Hooker, Bill Lathrop, Judy Stough, and E.H., a minor, by and through her parent, Jeff Hall, on behalf of themselves and all others similarly situated, by and through their attorneys, Parisi & Havens LLP, and Law Office of Joseph H. Malley, P.C., as and for their complaint, and demanding trial by jury, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through their attorneys, which are alleged upon knowledge, sue Defendant Specific Media, Inc., Plaintiffs' allegations as to themselves and their own actions, as set forth herein are based upon their personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. Based upon such investigation, Plaintiffs believe that substantial evidentiary support exists for the allegations herein or that such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## NATURE OF THE ACTION

1.     Plaintiffs bring this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3on behalf of themselves and a class of similarly situated Internet users, each a "Class Member"

1  of the putative "Class," as further described herein, who were victims of fraud and

2  unfair business practices; wherein their privacy, financial interests, and computer

3  security rights, were violated by the following Defendant ("Defendant"): Specific

4  Media, Inc., (hereinafter referred to as "Specific Media"), in concert with websites,

5  and its "counter and statistics" tracking services affiliated individually with

6  Specific Media, referred collectively to as, "SpecificClick Flash Cookie

7  Affiliates," by setting Flash cookies on their users' computers to use the Flash

8  Media Player local storage Flash on those computers to back up browser cookies

9  for the purposes of restoring them later.

10      2.      SpecificClick Flash Cookie Affiliates each independently, with

11  Specific Media, knowingly authorized, directed, ratified, approved, acquiesced in,

12  or participated in conduct made the basis of this Class action, which included, but

13  was not limited to, setting of an online tracking device which would allow access

14  to and disclosure of Internet users' online activities as well as personal information

15  ("PI"), personal identifying information ("PII"), and/or sensitive indentifying

16  information ("SII") derived from such online activities, including but not limited

17  to, users' activities on non-SpecificClick Flash Cookie Affiliates' websites, and its

18  tracking services, and which Defendant accomplished covertly, without actual

19  notice to users, awareness by users, or consent and choice of users, and which

20  information Defendant obtained deceptively, for purposes not disclosed within

21  their Terms of Service and/or Privacy Policy, which purposes included

22  Defendant's commercial gain and nefarious purposes.

23      3.      Plaintiffs and Class Members are consumers in the United States who

24  use their computers to access websites on the Internet and who configured their

25  web browser privacy settings to deny permission for third parties to set cookies on

26  their computers, and visited online one of the SpecificClick Flash Cookie

27  Affiliate's websites.

28      4.      SpecificClick Flash Cookie Affiliates are websites, and tracking

1   services, which acted with Defendant Specific Media, independently of one

2   another, and hacked the computers of millions of consumers' computers to plant

3   rogue, cookie-like tracking code on users' computers. With this tracking code,

4   Defendant circumvented users' browser controls for managing web privacy and

5   security.

6        5.    Plaintiffs and Class Members that visited the websites of the

7   SpecificClick Flash Cookie Affiliates had tracking codes installed on their

8   computers by Defendant Specific Media acting in concert with the respective

9   SpecificClick Flash Cookie Affiliate website, and/ or in concert with its

10   SpecificClick Flash Cookie Affiliate website tracking service, without notice or

11   consent, and which tracking codes could not easily be detected, managed or

12   deleted. In cooperation with the SpecificClick Flash Cookie Affiliates, Specific

13   Media planted its own tracking code on users' computers—but not in a browser

14   cookie. Specific Media and SpecificClick Flash Cookie Affiliates stored tracking

15   code as Adobe Flash Media Player local shared objects (LSOs). Adobe Flash

16   Media Player is software that enables users to view video content on their

17   computers.

18        6.    Once the tracking code was installed by the Defendant, such provided

19   the mechanism to track Plaintiffs and Class Members that visited non-

20   SpecificClick Flash Cookie Affiliates websites by  having their online

21   transmissions intercepted, without notice or consent; moreover if the user deleted

22   the browser cookie, the Flash cookie would be used to "re-spawn" the browser

23   cookie.

24        7.    Defendant perpetrated this exploit so they could obtain personal

25   identifying information, monitor users, and to sell users' data. The personal

26   information Defendant misappropriated and compiled, with information provided

27   from Specific Media and SpecificClick Flash Cookie Affiliates includes details

28   about user profiles to identify individual users and track them on an ongoing basis,

1   across numerous websites, even spotting and tracking users when they accessed the

2   web from different computers, at home and at work. This sensitive information

3   may include such things as users' video viewing choices and personal

4   characteristics such as gender, age, race, number of children, education level,

5   geographic location, and household income, what the web user looked at and what

6   he/she bought, the materials he/she read, details about his/her financial situation,

7   his/her sexual preference, his/her name, home address, e-mail address and

8   telephone number, and even more specific information like health conditions, such

9   as DEPRESSION.

10        8.    For example, shown below are the computer logs of an individual,

11  name redacted for privacy purposes, suffering from DEPRESSION, that visited a

12  health-related website on March 1, 2010 at 3:13:57 AM to watch a video related to

13  DEPRESSION. The computer activity log notes the users' name and the

14  individual's computer id, represented by an eight (8) digit hexadecimal ID code

15  composed of numbers and letters from the users' hard drive are as follows:

16  URL          :http://depression.[name redacted].com/pub_videoplayer/player/ut.swf
    Filename     : [name redacted]-ut.sol
17  Created Time  : 3/1/2010 3:13:57 AM
18  Modified Time : 3/1/2010 3:13:57 AM
    File Size     : 67
19  File Path     : C:\Users\[name redacted]\AppData\Roaming\Macromedia\Flash
20  Player\#SharedObjects\[user id redacted]\depression.[name
    redacted].com\pub_videoplayer\player\ut.swf\[name redacted]-ut.sol

21        9.    Defendant's perpetration of this exploit was independently confirmed

22  in a report issued by academic researchers and titled, "Flash Cookies and Privacy,"

23  which found that:

24              a)    A user visiting site would receive a standard, browser cookie,
              and an identical "Flash cookie."
25              b)    If the user deleted the browser cookie, the Flash cookie would
26              be used to "re-spawn" the browser cookie.
              c)    These operations happened without any notice to the user and
27              without any consent from the user.

28

"Flash Cookies and Privacy," A. Soltani, S. Canty, Q. Mayo, L. Thomas, C.J. Hoofnagle, Univ. Cal., Berkeley, Aug. 10, 2009 at 3, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862 (last accessed July 28, 2010).

10.     Defendant's use of the Adobe Flash Media Player for tracking online users was condemned by Adobe:

> *"Adobe condemns the practice of using Local Storage to back up browser cookies for the purpose of restoring them later without user knowledge and express consent."*

http://www.ftc.gov/os/comments/privacyroundtable/544506-00085.pdf (last accessed August 5, 2010)

> *"A few months back, StatCounter was approached by an advertiser, offered lots of $$$, and asked to include a spyware cookie on all of our member sites…we refused on the spot.*
>
> *You install StatCounter to track visitors to your site NOT to open yourself and your visitors up to being spied upon by phantom advertising corporations.*
>
> *It appears, however, that other players in the world of webstats were happy to take up this offer…*
>
> *We were shocked to discover just today that another well known stats provider is allowing up to 9 cookies to be installed in the browser of every visitor that hits one of their member websites. This means that the provider is making money by transmitting data on you and your visitors to a third party advertiser. Not only that, but to add insult to injury, the cookies are causing the member websites to load very slowly too."*

http://blog.statcounter.com/2007/03/statcounter-says-no/ (last accessed August 12, 2010)

> *"SiteMeter, a well-known web stats providers, is pushing* specificclick *tracking and advertising cookies on to visitors of sites using their service."*

http://michaelsync.net/2007/04/11/things-you-should-know-before-using-sitemeter (last accessed August 12, 2010)

## JURISDICTION AND VENUE

11.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) against Defendant.  A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred in this District and Defendant conducts business with consumers in this District. Defendant Specific Media's principle executive offices and headquarters are located in this District at 4 Park Plaza, Suite 1500, Irvine, California 92614.

12.     Subject-matter jurisdiction exists in this Court related to this action pursuant to 28 U.S.C. § 1332.  The aggregate claims of Plaintiffs and the proposed Class Members exceed the sum or value of $5,000,000.00.

13.     Venue is proper in this district and vests jurisdiction in the California state and federal courts in the district of the location of their principal corporate place of businesses. Thus, mandatory jurisdiction in this U.S. District Court vests for any Class Member, wherever they reside, for the online activity made the basis of this action which occurred within the United States. The application of the law of the State of California should be applied to any online activity made the basis of this action anywhere, within the United States, as if any and all activity occurred entirely in California and to California resident. Thus, citizens and residents of all states are, for all purposes related to this instant Complaint, similarly situated with respect to their rights and claims as California residents, and therefore are appropriately included as members of the Class, regardless of their residency, or wherever the online activity occurred made the basis of this action.

14.     Minimal diversity of citizenship exists in this action, providing jurisdiction as proper in the Court, since Defendant is a corporation headquartered in this District, and Plaintiffs include citizens and residents of this District, and

1    assert claims on behalf of a proposed Class whose members are scattered

2    throughout the fifty states and the U.S. territories; thus there is minimal diversity of

3    citizenship between proposed Class Members and the Defendant.

4         15.    The U.S. Central District of California is the judicial district wherein

5    the basis of the conduct complained of herein involving the Defendants was

6    devised, developed, implemented.  The actual interaction of information and data

7    was activated from, and transmitted to and from this District; therefore all evidence

8    of conduct as alleged in this complaint is located in this judicial district.

**PARTIES**

9

10        16.    Plaintiff Genevieve La Court ("G. La Court"), is a citizen and resident

11   of Los Angeles, California, (Los Angeles County). On information and belief, G.

12   La Court incorporates all allegations within this complaint. G. La Court is a

13   representative of the "U.S. Resident Class," the "California Class," and the

14   "Injunctive Class" defined within the Class Allegations.  At all relevant times

15   herein, G. La Court experience(s) related to the Defendant was as an Internet user

16   that, on one or more occasions during the Class period, in the city of residence,

17   accessed online a website owned and operated by a SpecificClick Flash Cookie

18   Affiliate, which included a SpecificClick Flash Cookie Affiliate website tracking

19   service, and had a Defendant Flash Cookie tracking device embedded within their

20   computer.

21        17.    Plaintiff Deirdre Harris ("D. Harris"), is a citizen and resident of

22   Andrews, Texas, (Andrews County). On information and belief, D. Harris

23   incorporates all allegations within this complaint. D. Harris is a representative of

24   the "U.S. Resident Class" and the "Injunctive Class" defined within the Class

25   Allegations.  At all relevant times herein, D. Harris experience(s) related to the

26   Defendant was as an Internet user that, on one or more occasions during the Class

27   period, in the city of residence, accessed online a website owned and operated by a

28

SpecificClick Flash Cookie Affiliate, which included a SpecificClick Flash Cookie Affiliate website tracking service, and had a Defendant Flash Cookie tracking device embedded within their computer.

18.     Plaintiff Cahill Hooker ("C. Hooker"), is a citizen and resident of Dallas, Texas, (Dallas County).  C. Hooker is a representative of the "U.S. Resident Class" and the "Injunctive Class" defined within the Class Allegations. On information and belief, C. Hooker incorporates all allegations within this complaint. At all relevant times herein, C. Hooker experience(s) related to the Defendant was as an Internet user that, on one or more occasions during the Class period, in the city of residence, accessed online a website owned and operated by a SpecificClick Flash Cookie Affiliate, which included a SpecificClick Flash Cookie Affiliate website tracking service, and had a Defendant Flash Cookie tracking device embedded within their computer.

19.     Plaintiff Bill Lathrop ("B. Lathrop"), is a citizen and resident of Pahrump, Nevada, (Nye County). On information and belief, B. Lathrop incorporates all allegations within this complaint.  B. Lathrop is a representative of the "U.S. Resident Class" and the "Injunctive Class" defined within the Class Allegations.  At all relevant times herein, B. Lathrop experience(s) related to the Defendant was as an Internet user that, on one or more occasions during the Class period, in the city of residence, accessed online a website owned and operated by a SpecificClick Flash Cookie Affiliate, which included a SpecificClick Flash Cookie Affiliate website tracking service, and had a Defendant Flash Cookie tracking device embedded within their computer.

20.     Plaintiff Judy Stough ("J. Stough"), is a citizen and resident of Garland, Texas, (Dallas County). On information and belief, J. Stough incorporates all allegations within this complaint. J. Stough is a representative of the "U.S. Resident Class" and the "Injunctive Class" defined within the Class Allegations. At all relevant times herein, J. Stough experience(s) related to the Defendant was

1   as an Internet user that, on one or more occasions during the Class period, in the
2   city of residence, accessed online a website owned and operated by a SpecificClick
3   Flash Cookie Affiliate, which included a SpecificClick Flash Cookie Affiliate
4   website tracking service, and had a Defendant Flash Cookie tracking device
5   embedded within their computer.

6        21.   Plaintiff E.H. ("E. H."), is a citizen and resident of Forney, Texas,
7   (Kaufman County), and a minor, represented by and through her parent Jeff Hall.
8   On information and belief, E. H. incorporates all allegations within this complaint.
9   E.H. is a representative of the "U.S. Resident Class" and the "Injunctive Class"
10  defined within the Class Allegations. At all relevant times herein, E. H.
11  experience(s) related to the Defendant was as an Internet user that, on one or more
12  occasions during the Class period, in the city of residence, accessed online a
13  website owned and operated by a SpecificClick Flash Cookie Affiliate, which
14  included a SpecificClick Flash Cookie Affiliate website tracking service, and had a
15  Defendant Flash Cookie tracking device embedded within their computer.

16       22.   Defendant Specific Media, Inc., doing business online, using domains
17  which include, but not limited to: SpecificClick, Specificclick.net, and
18  Specificclick.com (hereinafter referred to as "Specific Media"), is a Delaware
19  corporation which maintains its headquarters at 4 Park Plaza, Suite 1500, Irvine,
20  California  92614. Defendant Specific Media, Inc., does business throughout the
21  United States, and in particular, does business in State of California and in this
22  County.

23       23.   This Class action does not include Specific Media affiliated
24  corporations and websites, and its tracking services, which were not involved in
25  whole, or part, setting, or allowing Specific Media to set, a flash cookie on its
26  users' computer hard drive to use the local storage within the user's flash media
27  player to back up browser cookies for the purpose of restoring them later without
28  actual notice/awareness and consent/choice of the user.

24.     This Class action does not include Specific Media affiliated corporations and websites, and its tracking services, which provided its users adequate actual notice and awareness, that personal information would be collected, and allowed users' choice as to how the personal information collected would be used, as it relates to information obtained by the placement of flash cookies on the users' computer hard drive and the use of user's local storage within their flash media player to back up browser cookies for the purpose of restoring them later without actual notice/awareness and consent/choice of the user.

25.     This Class action does not include Specific Media affiliated corporations and websites, and its tracking services, which accessed the flash media player on a user's computer for its intended purpose, as governed by the flash media player's EULA, and was not related in whole, or part, on using the users' computer hard drive and using local storage within their flash media player to back up browser cookies for the purpose of restoring them later without actual notice/awareness and consent/choice of the user.

26.     The conduct complained of includes, but not limited to, the interception of electronic communication of Plaintiffs and Class Members involving non-SpecificClick Flash Cookie Affiliates, obtained in transit and temporarily stored for a limited period in their computer's electronic storage. *In re: Doubleclick, Inc. Privacy Litigation,* 154 F. Supp.2d 497,00 Civ. 0641 (S.D.N.Y., March 28, 2001)

27.     The conduct of Specific Media individually and in concert with the SpecificClick Flash Cookie Affiliates, individually and jointly, is a fraud that has been perpetrated for years, facilitated, and coordinated, by some of the world's largest websites and the network advertising industry, thereby costing the Class upwards of tens of millions of dollars. Defendant has been systematically defrauding Class Members in a covert operation of surveillance made possible by their gross misconduct, negligence, apparent coordination, and actual fraud, and

1  violating one (1) or more of the following:

a)  Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA");

b)  California's Computer Crime Law, Penal Code § 502 (the "CCCL");

c)  California's Invasion Of Privacy Act, California Penal Code § 630;

d)  California's Consumer Legal Remedies Act, Civil Code § 1750 ("CLRA");

e)  California's Unfair Competition Law, Business and Professions Code § 17200 ("UCL");

f)  Trespass to Personal Property / Chattels; and

g)  Unjust Enrichment

28.    SpecificClick Flash Cookie Affiliates' privacy documents omit entirely the actual identity of its association with Specific Media, limiting the user's awareness of, and an inability to determine accurately, the involvement of Specific Media, or locate the Specific Media website, compounded further by Specific Media defining its business as a media measurement and web analytics company while the SpecificClick Flash Cookie Affiliates' privacy documents refer only to associations involving advertising networks.

29.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates' privacy documents describe "associations," misleading the users which interpret such to be associated corporate subsidiaries, withholding accurate information that such includes other entities than advertising networks, such as: data exchanges, traffic measurement service providers, and marketing analytics service providers.

30.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates' websites, and its tracking services, are owned by parent companies that have many subsidiaries and fail to provide adequate information about third-party information sharing, different than affiliate sharing, which is subject to more restrictions, including opt-in or opt-out consent requirements. These restrictions are based upon the heightened risk associated with sharing information with unrelated entities, which have different incentives than the entity that collected the user data.

31.     Defendant Specific Media and SpecificClick Flash Cookie Affiliates do not make adequate distinctions between sharing with affiliates, contractors, and third parties, instead, vaguely stating that they do not share user data with unrelated third parties and vaguely disclosing that they share data with affiliates. Users must interpret an affiliate to be a third party, but given the actual usage of these terms of SpecificClick Flash Cookie Affiliates' privacy policies, that assumption would be mistaken.

32.     Defendant Specific Media and SpecificClick Flash Cookie Affiliate users are unable to identify the corporate families to which these Defendant websites belong; which makes it difficult for a user to discover exactly who such associated entities are, thus their practices are deceptive. A practice is deceptive if it involves a representation, omission or practice that is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment. The conflicting statements in the privacy policies would most likely confuse or mislead a reasonable consumer. The confusion would also likely be to their detriment, as surveys indicate that users do not want companies to collect data about them without permission.

33.     Defendant Specific Media and SpecificClick Flash Cookie Affiliates' privacy documents discuss that the data collection practices of entities associated with their corporations are outside the coverage of their privacy policies. This appears to be an attempt to create a critical loophole used by SpecificClick Flash Cookie Affiliates compounding their attempts to violate the privacy protection of their users.

34.     Defendant Specific Media and SpecificClick Flash Cookie Affiliates' privacy documents fail to provide adequate notice that Defendant Specific Media and SpecificClick  Flash Cookie Affiliates allow access to personal behavioral data of their users, including but not limited to, such data embedded with their cookies, to Specific Media, which in turn shares the data with its marketing partners or

1   corporate affiliates and subsidiaries, meaning that user behavior will be profiled by
2   any other entities with whom those sites may choose to share this information.
3   Defendant Specific Media and SpecificClick Flash Cookie Affiliates state they do
4   not share data with third parties, but they do share data with affiliates, suggesting
5   that they only share data with companies under the same corporate ownership.

6       35.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates'
7   privacy documents referenced the use of Flash cookies, but state such is used only
8   for audience measurement and not behavioral ad-targeting. The opt-out is
9   inconspicuous on their privacy page and appears in a small font header in the
10  corner of the page.

11      36.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates'
12  privacy documents do not expressly state that if a SpecificClick Flash Cookie
13  Affiliate user opts out that behavioral information will not be collected and shared,
14  but only that the Defendant Specific Media and SpecificClick Flash Cookie
15  Affiliate user will not receive Internet based advertising content from its
16  "advertising delivery service"; moreover its opt-out "unique cookie value" includes
17  identifying information which means the cookie is no longer non-unique.

18      37.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates'
19  privacy documents falsely imply some level of protection for the user. Defendant
20  Specific Media and SpecificClick Flash Cookie Affiliates' privacy documents are
21  sufficiently vague so as to refrain from fully disclosing information to their users
22  about what information is collected through their websites and their associated
23  entities, how the information is used, and the purposes for the collection and use of
24  this information, negating the possibility for their users to provide informed and
25  meaningful consent to these practices. Without adequate notice and informed and
26  meaningful user consent, users had no control over their personal information,
27  thus, the potential privacy dangers were not readily apparent to most users.

28      38.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

1  privacy documents require college-level reading skills for comprehension and

2  include substantial legalese, ambiguous and obfuscated language designed to

3  confuse, disenfranchise, and mislead the users.

4      39.   Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

5  privacy documents incorporate a multitude of hedging and modality markers so as

6  to minimize their use of covert surveillance technology and data-gathering tools,

7  while sending mixed messages related to privacy controls, advising users that

8  choosing to exercise such controls would cause in whole, or part, diminished

9  functionality of their websites, while such documents emphasize all cookies are

10  very small, thus unobtrusive, and pose no threat since "many websites use them."

11     40.   Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

12  privacy documents fail to adhere to an adequate notice and choice regime,

13  predicated on user choice, and informed by privacy policies. Defendant Specific

14  Media and SpecificClick Flash Cookie Affiliates' privacy documents provided

15  nuanced situations that created conditional yes or no answers to these basic

16  questions about a site's data collection and sharing practices, thus it is unclear how

17  an average user could ever understand these practices since the nuances were not

18  explained in the privacy policy. Choice, therefore, cannot be inferred.

19     41.   Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

20  privacy documents fail to provide notice that their data storage practices as they

21  relate to the period for which user data is stored, have no term period and are

22  indefinite.

23     42.   Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

24  privacy documents carefully attempt to parse the definitions of phrases related to

25  their tracking activity. Their privacy documents are more nuanced than such

26  categorized analysis allows for, omitting any direct reference to Flash cookies,

27  embedding surveillance technology into the user's computer hardware, use of

28  user's computer hardware to store data, use of technology to allow the perpetual

1   online tracking and surveillance of any and all online Internet activity of the

2   SpecificClick Flash Cookie Affiliate user.  They also refrain from disclosing that

3   the SpecificClick Flash Cookie Affiliate would use the user's local storage to back

4   up browser cookies for the purpose of restoring them later without user knowledge

5   and express consent, as evidenced by the attempt to hide its covert activity by

6   referring to their use of "other technologies," or "similar technologies" to cookies

7   and web beacons, in lieu of Flash cookies which would have perpetual existence

8   on a user's computer and the ability to respawn, i.e. "zombie cookies."

9        43.    Defendant Specific Media and SpecificClick Flash Cookie Affiliates'

10  privacy documents' verbiage was deceptive by design. This deception is especially

11  troubling when compared with the obligation imposed upon their online visitors to

12  download, read, and comprehend the vast amount of documents required to protect

13  one's online privacy, complicated by the cumulative effect of such task.

14       44.    In addition to downloading, reading and comprehending all of the

15  SpecificClick Flash Cookie Affiliates websites privacy documents, its users would

16  be required to locate and do the same for the website for the SpecificClick Flash

17  Cookie Affiliates "counter and statistic tracker" entity, then locate and do the same

18  for Specific Media and repeat this obligation. To accentuate the improbability of

19  completing this task though, SpecificClick Flash Cookie Affiliates website visitors

20  were not provided any information of the identity of Specific Media, nor the

21  SpecificClick Flash Cookie Affiliates "counter and statistic tracker" entity within

22  SpecificClick Flash Cookie Affiliates' Terms of Service and Privacy Policy.

23       45.    In addition to the SpecificClick Flash Cookie Affiliates and Specific

24  Media privacy documents, a user would be obligated to review their Flash media

25  player's privacy documents. Some Internet users possess multiple Flash media

26  players, and many are not aware of the identity of their Flash media player nor are

27  provided information from Defendant as to the identity of the Flash media player

28  being apprehended for use by the SpecificClick Flash Cookie Affiliates and/or

1  Specific Media. If a user could identify their involved Flash media player, and the

2  identity of the corporate entity for the Flash media player, the user would have

3  additional obligations imposed upon them to download, read, and comprehend the

4  Flash media player's privacy documents, such as Adobe's, the largest Flash media

5  player provider.

6      46.    SpecificClick Flash Cookie Affiliates' users' online privacy

7  protection was premised upon imposed requirement to download, read and

8  comprehend the accumulation of all privacy documents of SpecificClick Flash

9  Cookie Affiliates, Specific Media, and the user's Flash media player, such as

10  Adobe.

11      47.    A millisecond was the time allotted to an online visitor opening a

12  SpecificClick Flash Cookie Affiliates' webpage, before a Flash cookie was

13  embedded within their computer and data collected immediately, without their

14  awareness, knowledge or consent to such actions. Such occurred without the

15  benefit of being provided adequate time to access, read, and attempt to

16  comprehend the Terms of Service/Use and Privacy Policy for SpecificClick Flash

17  Cookie Affiliates' website, Specific Media's, and the website of the user's Flash

18  media player. While only the most technical savvy online users were familiar with

19  cookies, a finite amount of individuals even knew about Flash cookies, let alone

20  could possibly comprehend the technical aspects of Flash cookies inherent within

21  the Defendant's privacy documents.

22      48.    To put matters in perspective, a Herculean task would be required,

23  and equate in work count to reading, in a millisecond, either the United States

24  Constitution eleven (11) times, Plaintiffs' complaint twice, or one (1) of George

25  Orwell's novels, or more appropriately,: Nineteen Eighty-Four:

26          *"There was of course no way of knowing whether you were being*
*watched at any given moment. How often, or on what system, the*

27          *Thought Police plugged in on any individual wire was guesswork.*

28          *It was even conceivable that they watched everybody all the time.*

1  
2  
3  

*But at any rate they could plug in your wire whenever they wanted to. You had to live—did live, from habit that became instinct—in the assumption that every sound you made was overheard, and, except in darkness, every movement scrutinized."*

4  

## STATEMENT OF FACTS

5  
6  

### A. Background

7       49.    This consumer class action involves a pattern of covert online

8  surveillance, wherein the SpecificClick Flash Cookie Affiliates, operated

9  individually with Specific Media; associated in fact, targeted Internet users that

10  visited SpecificClick Flash Cookie Affiliates' websites, and knowingly, without

11  the user's knowledge or consent; accessed the user's computer, transmitting a

12  program, information, code, and command, to set a tracking device within the

13  user's Flash media player, to intercept electronic communications, overriding

14  user's security preferences, by setting a Flash cookie on the user's computer hard

15  drive to use its local storage within the Flash media player to back up browser

16  cookies for the purposes of restoring them later, if deleted by its users. This

17  practice also referred to as "browser cookie re-spawning," circumvented the user's

18  intent to clear browser cookies. The objective of this scheme was the online

19  harvesting of consumers personal information for online marketing activities. The

20  Defendant's uniform business practice was as simple as it was deceptive and

21  devious.

*"We found that top 100 websites are using Flash cookies to "respawn," or recreate deleted HTTP cookies. This means that privacy-sensitive consumers who "toss" their HTTP cookies to prevent tracking or remain anonymous are still being uniquely identified online by advertising companies. Few websites disclose their use of Flash in privacy policies..."*

22  
23  
24  

25  Ashkan Soltani, Shannon Canty, Quentin Mayo, Lauren Thomas, Chris Jay

26  Hoofnagle, "Flash Cookies and Privacy" (10 August 2009), online:

http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862.

27  
28

## B. <u>Traditional Online Advertising</u>

50.     Commercial websites, such as SpecificClick Flash Cookie Affiliates, use online advertising in order to promote content to the consumers without charge and require online advertising to support this objective.  Commercial websites, known as "publishers" allow portions of their web page to be sold to online advertising networks, which act as an intermediary between "publishers" and the "advertisers."

51.     Most commercial websites that are advertising supported, allow the ad images to be served directly from the servers of the advertisers or an advertising network, and do not keep their advertisements locally. Rather, they subscribe to a media service that places those ads for them. This is accomplished by a media service.

52.     Web advertisements provided by "third-party ad servers" inject their advertisements into hosting web pages. The web page upon which an advertisement will appear reserves a blank space in the page's layout with a URL containing a third-party advertising server address. Whenever that page is displayed, the user's web browser will read the page, discover the URL address of the advertising server, and request a web page asset from it. This could be an image, Flash animation, video, or other resource from the third-party server. When the advertising asset is received by the browser, it will be inserted into the page to appear in the reserved location and become part of the delivered page.

53.     Publishers desiring to identify and track users while they were on their site embed "first party" tracking devices, "session cookies," used to facilitate a user's activities within the selected website while actively on that site, and "persistent cookies," which exist beyond the period of the initial website session and provides tracking technology while a user visits all websites.

54.     Online advertising companies use a tracking system to gauge webpages as activity while the user navigated online in and out of its advertising

1   network, and "third-party cookies" accomplish this goal. In the process of

2   advertising placement/injection, advertisers can place cookies on the user's

3   machine. Since the advertisers place ads on multiple sites, the cookie allows the

4   advertiser to observe the user's browsing behavior across many websites. Large

5   ad-serving agents span significant portions of the World Wide Web and thereby

6   acquire extensive behavioral data. The net result is that the user gets a cookie from

7   the media service without ever having visited it.

8       55.    Cookies typically are small files. The cookie text files themselves

9   consist of strings of "name-value" pairs that reduce to code various pieces of

10  information about an individual's computer, the browsing choices a person makes

11  while accessing a Web site and any additional information a person discloses

12  during a particular visit. While some cookies may contain minimal information,

13  others may record a wide array of user-profiling information, IP numbers,

14  shopping cart contents, user IDs, user-selected preferences, serial numbers,

15  frequencies of contact with companies, demographics, purchasing histories, credit-

16  worthiness, social security numbers and other personal identifiers, credit card

17  numbers, phone numbers, and addresses. In addition to that user specific

18  information, the name-value pairs include basic parameters regarding the range of

19  servers and sites that can access the cookie from an individual's hard drive as well

20  as the cookie expiration date.

21      56.    Cookies accumulate each time the property is set. Once the maximum

22  pair limit is reached, subsequent set will push older name/value pair off in favor of

23  the new name/value pair. As text, browser cookies are not executable. Because

24  they are not executed, they cannot replicate themselves.

25      57.    Cookies are based on a two-stage process. First the cookie is stored in

26  the user's computer. The web server creates a specific cookie, which is essentially a

27  string of text containing the user's preferences, and it transmits this cookie to the

28  user's computer. The user's web browser receives the cookie and stores it on the

1 computer. As a result, personal information is formatted by the web server,

2 transmitted, and saved by the user's computer.

3     58.     During the second stage, the cookie is non-transparently and

4 automatically transferred from the user's machine to a web server. Whenever users

5 direct their web browser to display a certain web page from the server, the browser

6 will, without user knowledge, transmit the cookie containing personal information

7 to the web server.

8     59.     Cookies are normally only sent to the server setting them or a server

9 in the same domain (e.g., a cookie set by mail.abc.com could be shared with

10 calendar.abc.com). These are called first-party cookies because they are set by the

11 site displayed in the address bar of the Web browser. Third-party cookies, on the

12 other hand, are typically used by advertising networks to track users across

13 multiple websites where the networks have placed advertising—which allows the

14 advertising network to target subsequent advertisements to the user's presumed

15 interests and also to limit the number of times a user is shown a particular ad.

16     60.     Normal Internet cookies are limited in their size to four kilobytes.

17 This was part of the RFC 2109 limitations standard which is conformed to by both

18 Internet Explorer and Netscape and was compiled by The Internet Engineering

19 Task Force (IETF). Cookies may hold text or array data, yet are still limited to a

20 size of 4kb each. Normally cookies begin their existence in the memory of the

21 browser and only if a cookie is given a longer life span than the life of the browser

22 will it then be written to disk. Cookie specifications suggest that browsers should

23 be able to save and send back a minimal number of cookies. In particular, an

24 Internet browser is expected to be able to store at least 300 cookies of four

25 kilobytes each, and at least 20 cookies per server or domain. The cookie setter can

26 specify a deletion date, in which case the cookie will be removed on that date. If

27 the cookie setter does not specify a date, the cookie is removed once the user quits

28 his or her browser. As a result, specifying a way for making a cookie survive

across sessions. For this reason, cookies with a date is expiration dates are referred
to as "persistent" cookies.

61.    Whenever a web browser loads a web page or component of a web
page, it will include in its request for that component any cookies already stored on
the user's computer that are associated with the domain hosting the content. The
web server, in turn, can send a cookie or update a cookie already existing on the
user's computer.

62.    Upon each visit to a web site or a page within that site, a person's
computer leaves certain electronic tracks or markers. Taken together, those
markers create a trail of information commonly referred to as "clickstream data."

63.    Clickstream data may include basic information, such as the type of
computer an individual used to access the Internet, the kind of Internet browser
utilized and the identification of each site or page visited. In addition, were an
individual to disclose certain information during the visit, the clickstream data may
also include more personalized details, such as passwords, e-mail addresses, credit
card numbers, name, address, date of birth, gender, or zip code.

64.    Once an individual's hard drive contains a cookie for a particular Web
site, each time a person navigates through that site and requests a different page,
the server gains access to the current cookie text. In essence, the contents of the
cookie file are attached to every subsequent request back to the server for a
different webpage. Upon receiving the cookie contents that get embedded into the
browser's request, the server may alter the cookie text to reflect new or updated
information (such as the new page visited or any personal details disclosed on the
page prior to sending the request). Along with the new page the user requested, the
server would send a revised cookie file that replaces the old text. Thus, once
deposited on a user's computer, cookies facilitate a flow of communication back
and forth between an individual's computer and the server that maintains a
website.

## C. <u>Web Browser Preferences</u>

65.　Computers are used for everything from banking and investing to shopping and communicating with others through email or chat programs. Although online communications may not be considered "top secret," online users do not want third parties reading their email, or examining personal information stored on their computer (such as financial statements), or downloading software, such as Flash cookies, without their knowledge or consent.

66.　Individuals have a reasonable expectation of privacy in their personal computer, the integrity of their computers, and the confidentiality of their communications with the Internet websites that they visit, using their Internet connection to transmit and receive personal and private data, including but not limited to, personal emails, personal Internet research and viewing, credit card information, banking information, personal identifiable information such as social security number, date of birth, and medical information.

67.　Since some companies that used cookies have figured methods of tracking users when users visit various sites, most modern browsers allow users to set whether to allow or disallow HTML Cookies, by setting a browser to accept all cookies, to reject all cookies, or to notify you whenever a cookie is offered so that you can decide each time whether to accept it. When the user is prompted, the contents of the cookie can be viewed and the user can select whether to Deny, Allow for Session, or Allow the cookie. This gives the user more information about what sites are using cookies and also gives more granular control of cookies as opposed to globally enabling them.

68.　Browser cookie controls and preference settings provide greater user privacy control. The purpose of a browser privacy mode is to allow users to browse the Internet without leaving data tracks. Browsers save visited websites in the browsing history, downloaded files in the download history, search terms in the search history, and data typed into online registration forms including cached

version of such files. Cookie controls allow the user to decide which cookies can be stored on their computer and transmitted to websites, and using parental controls to block specific content by adjusting the tabs located within the user's browser.

69.     Excluding the paragraph advanced by the advertising industry to promulgate questionable activities to the governmental authorities and privacy group, a majority of online users do not want tailored advertisements,

> *"Contrary to what many marketers claim, most adult Americans (66%) do not want marketers to tailor advertisements to their interests. Moreover, when Americans are informed of three common ways that marketers gather data about people in order to tailor ads, even higher percentages - between 73% and 86% - say they would not want such advertising."*

Turow, Joseph, King, Jennifer, Hoofnagle, Chris Jay, Bleakley, Amy and Hennessy, Michael, Americans Reject Tailored Advertising and Three Activities that Enable It (September 29, 2009). http://ssrn.com/abstract=1478214

## D. Flash Player- Cookies-LSO

70.     Flash Player is an application that, while running on a computer that is connected to the Internet, is designed to contemporaneously interact with websites containing Flash content that are being visited online. As such, under certain configurations, the application has the potential to silently compromise its users' Internet privacy, and do so without their knowledge. When stored on a user's computer, (.sol) files are capable of sending personally sensitive data back out over the Internet without the user's knowledge to one or more third parties.

71.     Flash cookies are not transferred from the client back to the server like HTTP cookies. Instead, downloaded Flash objects that run locally in the web browser [locally stored/run objects] read and write these cookie-like files. Using JavaScript, this data can be pulled out of the Flash objects and then used like any other data by the web application. It is not necessary to have any visible signs that a Flash object is running on a given page. In fact, it would be difficult to reliably detect if an application were using Flash cookies. When you drill down in each

1  domain's directory, you will eventually find a "SOL" file. This file contains the

2  data that is stored and used as the Flash cookie.

3       72.    DOM Storage is often compared to HTTP cookies. Like cookies, web

4  developers can store per-session or domain-specific data as name/value pairs on

5  the client using DOM Storage. However, unlike cookies, DOM Storage makes it

6  easier to control how information stored by one window is visible to another.

7       73.    Functionally, client storage areas are quite different from cookies.

8  DOM Storage doesn't transmit values to the server with every request as cookies

9  do, nor does the data in a local storage area ever expire. And unlike cookies, it is

10  easy to access individual pieces of data using a standard interface that has growing

11  support among browser vendors. If objects are stored in a Local Object Repository

12  then these are available to specific actions but not to all the actions. But if these

13  objects are stored in one or more Shared Object Repositories then multiple actions

14  or tests can use them.

15       74.    A local shared-object can only be read the same domain that

16  originates the shared object.  Currently, using a local shared-object is the only way

17  to instruct a Flash movie write data to the user's hard drive directly from within the

18  movie.   On Windows, local shared-objects are stored in Documents and

19  Settings\userName\Application Data\Macromedia\Flash Player\#SharedObjects.

20  According to the Macromedia docs, local shared-objects has a file extension of

21  .SO, but saved with .SOL extension on Windows XP. Unlike cookies that are

22  capable of storing only text values, Local Shared Objects can store many data

23  types including Number, String, Boolean, XML, Date, Array, and Object.

24       75.    Flash LSO cookies properties:
        • SOL files are stored outside of the browser's cache, and removed

25          when a web browser's cache is cleared.

26        • By default they offer storage of 100 KB (compare: Usual cookies 4
           KB).

27        • Browsers are not aware of Flash cookies, and LSO's usually cannot be

28

1   removed by browsers.

2   • Flash can access and store highly specific personal and technical
    information (system, user name, files...).

3   • Ability to send the stored information to the appropriate server,
    without user's permission.

4   • Flash applications do not need to be visible

5   • There is no easy way to tell which Flash-cookie sites are tracking you.

6   • Shared folders allow cross-browser tracking

    • There is currently no mechanism to force a shared-object to "expire".
7   Browser cookies have an expiration mechanism built in.

8   • User can only disable local shared-object by disallowing a particular
    site to write to the user's hard drive.  This can be done in the
9   Macromedia player Setting window.

76.   Since Flash runs independently from the browser, it needs its own
temporary storage area for web sites to store information related to the Flash
movie, saving objects, in either the local and shared object repositories. The data is
split into two folders: "#SharedObjects" and "macromedia.com". The content
located inside the "macromedia.com" is set by the site and controls settings for the
site visited, while the content located inside "#SharedObjects" is created by the site
visited or a third party company and contains the cookie values we are researching.

77.   Defendant's Flash cookie setting process was a system, method and
computer readable medium configured to track Internet users as they browse web-
sites when cookies are disabled or deleted. Defendant SpecificClick Flash Cookie
Affiliate's website receives a request for content from the computing-device. After
obtaining information about the computing-device, the tracking-server assesses the
request for content from the computing-device. If the computing-device has an
available Flash plug-in, the tracking-server transmits a Flash applet to the
computing-device. The Flash applet is configured to: determine whether a unique
Flash identifier has been assigned to the computing-device, generate the unique
Flash identifier if no unique Flash identifier has already been assigned to the
computing-device, transmit the unique Flash identifier to a tracking server, and

1  store the unique Flash identifier in local Flash storage. The process also stores a

2  cookie at the computing-device when no Flash plug-in is available.

3  **E.  "Flash Cookies and Privacy"- Berkeley Study**

4  78.  A study released by researchers at the University of California,

5  Berkeley and other universities, submitted to the federal government for

6  consideration as part of a new policy on the use of tracking technologies, revealed

7  the details of Defendant Specific Media's online privacy invasion of epidemic

8  proportions, that reverberated globally.

9  Ashkan Soltani *et al.*, "Flash Cookies and Privacy" (10 August 2009),
   online: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862.

10

11  **F.  Overlapping Values**

12  79.  The "Flash Cookies and Privacy," study attempted to infer the

13  intended uses of particular Flash cookies by examining the variable name for each

14  cookie, *i.e.*, volume, userID, and user, referred to as a "unique identifier;"

15  *"It's also worth mentioning that '_tpf' and '_fpf' were found to also
   contain unique identifiers which were also found to contain
   overlapping values as the ones found in HTML cookies for 'uid' or
   'userid.'"*

16

17  *"Of the top 100 websites, 31 had at least one overlap between a
   HTTP and Flash cookie. For instance, a website might have an HTTP
   cookie labeled "uid" with a long value such as 4a7082eb-775d6-
   d440f-dbf25. There were 41 such matches on these 31 sites. Most
   Flash cookies with matching values were served by third-party
   advertising networks. That is, upon a visit to a top 100 website, a third
   party advertising network would set both a third party HTTP cookie
   and a third party Flash cookie."*

18

19

20

21

22  Ashkan Soltani, Shannon Canty, Quentin Mayo, Lauren Thomas,
   Chris Jay Hoofnagle, "Flash Cookies and Privacy" (10 August 2009),
   online: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862.

23

24  80.  "Zombie cookies," or browser cookies that are respawned by Flash

25  cookies, required a Flash setting file and a directory, labeled by the domain, which

26  set the Flash cookie. Such created a history of all users' activities, thus the coding

27  required was neither inadvertent nor an "unintended effect," and permitted the

28

Flash cookie to respawn a deleted browser cookie derived from the history data file:

> "*Presence of Flash settings files- Each settings is stored in its own directory, labeled by domain. This creates a type of history file parallel to the one created by the browser. However, the Flash history is not deleted when browser controls are used to erase information about sites previously visited. This means that uses may falsely believe that they have fully cleared their history when using the standard browser tools.*"

Ashkan Soltani, Shannon Canty, Quentin Mayo, Lauren Thomas, Chris Jay Hoofnagle, "Flash Cookies and Privacy" (10 August 2009), online: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862.

81.   A technical discussion alone of respawning Flash cookies by ad networks in general, without visualization of such activity, fails to accentuate the willful and wanton disregard of user's preferences. Case in point: User's preference is to opt-out from having a Flash cookie set, this on 3/21/2010 at 10:18:08 AM evidenced within the log activity as "optout.sol."

> http://core. [name redacted].com/#com/[name redacted]OptOut.sol 3/21/2010 10:18:08 AM  3/21/2010 10:18:08 AM 61 C:\Users\[user's name redacted] \AppData\Roaming\Macromedia\Flash Player\#SharedObjects\3VYPQS2K\core. [name redacted].com\#com\[name redacted]\OptOut.sol

82.   User's Flash cookie preference is disregarded as evidenced within the log activity as "retargeting.sol." Such activity occurs within five (5) second on 3/21/2010 10:18:13 AM.

> http://core.[name redacted].com/#com/[name redacted]. Retargeting.sol 3/21/2010 10:18:13 AM      5/22/2010 9:12:24 AM 120 C:\Users\[user's name redacted] \AppData\Roaming\Macromedia\Flash Player\#SharedObjects\3VYPQS2K\core. [name redacted].com\#com\[name redacted].\Retargeting.sol

83.   The expiration date of cookie information and the entropy of the information contained in the cookie provides limited information. If the entropy is low (e.g. content is "volume =5") then it can be assumed to be a legitimate setting to be saved. If the entropy is high (e.g. "userId = b56574ce78d2f110b1gd522") then it is more likely than not a tracking id connected to a background database of

1   user information, i.e. a user goes to a website wherein the algorithm locates a

2   normal cookie stored by an advertising network, then the algorithm searched for

3   repeating keys. Every character (at least in a charset like ASCII) counts one byte,

4   thus counting the number of characters in "id=344499284532" which are 15 and in

5   "volume_level=98, language=English" which are 32. The analysis of both HTTP

6   and Flash cookies for key identifiers revealed undisputable correlations including

7   overlapping values.

8       84.    Researchers were able to indentify a high number of cookies similarly

9   labeled such as: "user ID." These cookies stored unique identifiers which allowed

10   user tracking; however unlike HTTP cookies used for tracking these cookies had

11   overlapping values. This respawning was because of the Flash cookies, provided

12   by Specific Media, had the same data values as the HTTP cookies, provided by the

13   SpecificClick Flash Cookie Affiliates, so in effect the Flash cookies acted as a

14   back-up on the computer systems once the HTTP cookies had been removed.  If

15   users simply deleted cookies without clearing the browser cache, the identifiers in

16   the deleted browser cookies still returned to the cookies, more than likely, using

17   information stored in the cache.

18       85.    When HTML cookies are deleted, the users would get a new value

19   when visiting the site. But when Flash cookies and HTML cookies are given the

20   same value, as they were on 31 of the top 100 websites, "it will restore the value of

21   your original cookie, and thereby nullifies the deletion of the HTML cookies,"

22   Soltani said

23           Moscaritolo, Angela. " Top Websites using Flash cookies to track user behavior." *SC Magazine*. (August 11, 2009)

24           http://www.scmagazineus.com/top-websites-using-Flash-cookies-to-track-user-behavior/article/141486/

25

26       86.    Defendant implanted identical code in the Plaintiffs and Class

27   Members' computers resulting in a uniform action to set redundant unique

28   identifiers used to identify and track users overlapping values.

## G. **Defendant's Harmful Business Practices**

87.    Defendant Specific Media's activities with SpecificClick Flash Cookie Affiliates occurred throughout the United States, and have secretly obtained personal and private information from Plaintiffs and the Class - a course of action and a body of information that is protected from interception, access, and disclosure by federal law.

88.    Defendant used, interfered with, and intermeddled with Class Members' ownership of their personal property, namely, their computers, by, directly or indirectly, secretly depositing cookies on their computers, secretly accessing their computers to obtain information contained in and enabled by the cookie, and secretly collecting personal data and information regarding each Class Members' Internet surfing habits contained in electronic storage on his/her computer.

89.    At all relevant times, Defendant's advertising technology has contained secret information-gathering capacities that were not disclosed to or known by Plaintiffs or the Class and which permitted Defendant to surreptitiously, in an unauthorized manner, and for tortious and unlawful purposes, intercept and access Plaintiffs' and the Class Members' personal and private information, monitor their Internet activity, and create detailed personal profiles based on such information.

90.    At all relevant times, Plaintiffs and the Class, as part of their normal Internet browsing and usage, visited websites that, unbeknownst to them, and Defendant utilized and/or facilitated tracking and profiling technology. Since they were doing so in the privacy of their own homes or offices, and since Defendant did not display any warning or indication that it was collecting or transmitting personal and private information to or from their computer systems, Plaintiffs and the Class had a reasonable expectation of privacy as to the nature of their activity

and the contents of any information they provided to or obtained from a particular website.

91.     Defendant has used those cookies and other surreptitious data-collection methods to secretly intercept and access computer users' personal data and web browsing habits and have transmitted this information to Defendant for its own commercial benefit.

92.     Defendant collected and/or disclosed covered information of Class Members about all or substantially all of their online activity, including across websites.

93.     Defendant's business practice unfairly wrests control from users who choose to delete their cookies in order to avoid being tracked. Advertising networks use unique IDs to identify the same user or computer across many different websites. Users who are aware of this may delete their cookies periodically, believing that the new cookies they receive will contain new unique identifiers, thus hindering the ability of advertising networks to track their behavior across sites. Using Flash cookies to re-identify users overrides this control, with little available redress for users. Although users may arguably protect themselves by periodically deleting their Flash cookies as well, the means for doing so are extremely obscure and difficult even for savvy consumers to use. Flash specifically attempts to obfuscate data within each LSO by controlling the format and forcing a binary serialization of any stored data, thus bypassing the web browser's same-origin security policy, allowing an application hosted on one domain to read data or code hosted on another.

94.     Defendant failed to disclose that its applied technologies also provide Defendant with the ability to surreptitiously intercept, access, and collect electronic communications and information from unsuspecting Internet users—including Plaintiffs and the Class.

95.     Defendant intercepted Class Members' electronic communications for

1  the purpose of committing a tortious or criminal act, and violated the constitutional

2  rights of Plaintiffs and Class Members.

3      96.    In all cases where some notice was provided, that notice was

4  insufficient, misleading, and inadequate. Consent under such circumstances was

5  impossible.

6      97.    In no case as alleged in this complaint, was adequate, informed notice

7  provided to any Class Member of the true nature and function of the Defendant

8  service.

9      98.    In any case where the opportunity of 'opting out' of the Defendant

10  service was provided, such 'opt out' rights were misleading, untrue, and deceptive.

11      99.    In no case was the collection of all Internet communication data

12  between the consumer and the Internet halted or affected in any way. All data was

13  still collected. The 'opt out' only affected what advertisements the consumer was

14  shown. Thus, the provision of the opportunity for opting out was, itself, totally

15  misleading.

16      100.   Plaintiffs and the Class Members did not voluntarily disclose their

17  personal and private information, including their Internet surfing habits, to

18  Defendant - and indeed never even knew that Defendant existed or conducted data

19  collection and monitoring activities upon and across its plaintiff and class

20  member's websites. Plaintiffs and the Class Members provided such information,

21  and had their Internet habits monitored, without their knowledge or consent, and

22  would not have consented having their personal and private information, including

23  their on-line profiles, used for Defendant's commercial gain.

24      101.   Defendant did not obtain consent from Plaintiffs and Class Members

25  for any collection or use and was not allowed to decline consent at the time such

26  statement was presented to the Class Members.

27      102.   Defendant did not obtain consent from Plaintiffs and Class Members

28  for any disclosure of covered information to unaffiliated parties and was not

1  allowed to decline consent at the time such statement was presented to the Class

2  Members.

3      103.   Defendant has covertly, without consent, and in an unauthorized,

4  deceptive, invasive, and fraudulent manner implanted Internet "Flash cookies"

5  upon Internet users' computer hard disk drives to use its local storage within the

6  Flash media player to back up browser cookies for the purposes of restoring them

7  later.

8      104.   Defendant intentionally accessed Plaintiffs and Class Members'

9  computer without authorization or exceeded authorized access to obtain

10  information from a protected computers, involved an interstate communications.

11      105.   Defendant sold, shared, and/or otherwise disclosed covered

12  information of Class Members to an unaffiliated party without first obtaining the

13  consent of the Class Members to whom the covered information related to.

14      106.   At all relevant times, Plaintiffs and Class Members' personal and

15  private information was intercepted by and/or accessed by Defendant and

16  transmitted to it on a regular basis, without alerting Internet users in any manner.

17  As a result, Defendant was able to and did access Plaintiffs' and Class Members'

18  computer systems and/or intercept their electronic communications without

19  authorization. Defendant has obtained, compiled, and used this personal

20  information for its own commercial purposes.

21      107.   Defendant intercepted Class Members' electronic communications for

22  the purposes of implanting unauthorized Flash cookies on Class Members'

23  computers; repeatedly accessing electronic communications without Class

24  Members' knowledge and consent so as to profile such persons' web browsing

25  habits, secretly tracking Class Members' activities on the Internet and collecting

26  personal information about consumers; and profiting from the use of the illegally

27  obtained information, all to Defendant's benefit and Class Members' detriment.

28      108.   Defendant intentionally intercepted, endeavored to intercept, or

1   procured another person to intercept or endeavor to intercept the electronic

2   communication of Plaintiffs and Class Members.

3        109.   Defendant has, either directly or by aiding, abetting and/or conspiring

4   to do so, knowingly, recklessly, or negligently disclosed, exploited,

5   misappropriated and/or engaged in widespread commercial usage of Plaintiffs' and

6   the Class' private and sensitive information for Defendant's own benefit without

7   Plaintiffs' or the Class' knowledge, authorization, or consent. Such conduct

8   constitutes a highly offensive and dangerous invasion of Plaintiffs' and the Class'

9   privacy.

10        110.   Defendant used and consumed the resources of the Plaintiffs and

11   Class Members' computers and substantially increased their Internet bandwidth by

12   gathering user information and transferring such to Defendant.

13        111.   Defendant caused harm and damages to Plaintiffs and Class

14   Members' computers finite resources, depleted and exhausted its memory, thus

15   causing an actual inability to use it for its intended purposes, and significant

16   unwanted CPU activity, disk usage, and network traffic resulting in instability

17   issues, such as applications freezing, failure to boot, and system-wide crashes.

18        112.   Defendant caused harm and damages to the Plaintiffs and Class

19   Members including but not limited to, consumption of their device's finite

20   resources, memory depletion which resulted in the actual inability to use if for its

21   intended purposes.

22        113.   The cumulative effect, and the interactions between spyware

23   components, caused the symptoms commonly reported by users: "a computer,

24   which slows to a crawl," or "overwhelmed by the many processes running on it."

25        114.   Defendant's downloads were not evident. Users assumed that the

26   issues relate to hardware, Windows installation problems, or another infection, and

27   resorted to contacting technical support experts, or even buying a new computer

28   because the existing system "has become too slow." Class Members attempting to

repair their own computer risked damaging their system files. Badly infected systems required a clean reinstallation of all their software in order to return to full functionality, with charges of a few hundred dollars to remove viruses and spyware, and unauthorized Flash cookies, if serviced in house, or on site such costs exceeded $40-$60 per hour.

115.   Defendant harmed Plaintiffs and Class Members by its actions which included, but not limited to the following:

a) Loss of valuable data by attempts to remove Flash cookies once discovered;

b) Incurred economic losses accompanied by an interruption in service;

c) Functionality of computer interfered with, including an inability of websites visited once Flash content was disabled;

d) Information was deleted, otherwise made unavailable;

e) Impaired the integrity and availability of data, programs and information.

116.   Defendant Specific Media and SpecificClick Flash Cookie Affiliates' technology wrongfully monitored Internet users' activities at each and every website users visited at which Defendant's products or services were not utilized. The wrongfulness of this conduct is multiplied by the fact that Defendant aggregates this information about users' habits across numerous websites and unjustly enriched Defendant to the severe detriment of Plaintiffs and the Class. Plaintiffs and the Class have been harmed, as they have been subjected to repeated and unauthorized invasions of their privacy - violations which continue to this day.

117.   The collection of data by Defendant was wholesale and all-encompassing. Data passing from the users' computers were acquired by Defendant without discrimination as to the kind, type, nature, or sensitivity of the data. Like the privacy one loses from an airport security body scanner, everything passing through the consumer's Internet connection was intercepted by Defendant, claimed as their property, and traded as a commodity. Regardless of any

representations to the contrary—all data—whether sensitive, financial, personal, private, complete with all identifying information, was intercepted, exposing users like "fish in a fishbowl."

## CLASS ALLEGATIONS
### Allegations as to Class Certification

118.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiffs bring this action as a Class action, on behalf of themselves and all others similarly situated as members of the following Classes (collectively, the "Class"):

    a) U.S. Resident Class: All persons residing in the United States that accessed a SpecificClick Flash Cookie Affiliate website and had a Defendant flash cookie set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.

    b) California Resident Class: All persons residing in California that accessed a SpecificClick Flash Cookie Affiliate website and had a Defendant flash cookie set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later. All California Resident Class Members are also members of the U.S. Resident Class.

    c) Injunctive Class: All persons after the date of the filing of this complaint, residing in the United States, that accessed a SpecificClick Flash Cookie Affiliate website and had a Defendant flash cookie set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.

119.   The Class action period, (the "Class Period"), pertains to the date, two years preceding the date of this filing to the date of Class certification.

120.   Plaintiffs reserve the right to revise this definition of the Class based on facts learned in the course of litigation of this matter.

121.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiffs bring this Class action, on behalf of themselves and the following Classes with respect to Plaintiffs' claims for violation of the:

    a) Computer Fraud and Abuse Act ("CFAA"),

b) California's Computer Crime Law, ("CCCL"),

c) Trespass to Personal Property / Chattels, and

d) Unjust Enrichment

>All persons residing in United States who, during the period of two years preceding the date of this filing to the date of Class certification (the "Class Period"), accessed a SpecificClick Flash Cookie Affiliate website and had a Defendant flash cookie set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.
>(hereinafter referred to as "CFAA/ CCCL SubClass.")

122.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiffs bring this Class action, on behalf of themselves and the following Class with respect to Plaintiffs' claims for violation of the:

a) California's Computer Crime Law ("CCCL"),

b) California's Invasion of Privacy Act,

c) Violation of California's Consumer Legal Remedies Act, Civil Code § 1750;

d) Violation of California's Unfair Competition Law, Business and Professions Code § 17200,

>All persons residing in United States who, during the Class period, and accessed a SpecificClick Flash Cookie Affiliate website and had a Defendant flash cookie set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.
>(hereinafter referred to as "California Resident Class.")

123.   On behalf of the U.S. Resident and California Resident Classes, Plaintiffs seek equitable relief, damages and injunctive relief pursuant to:

a) Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

b) California's Computer Crime Law, Penal Code § 502;

c) California Invasion Of Privacy Act, California Penal Code § 630;

d) Violation of California's Consumer Legal Remedies Act, Civil Code § 1750;

e) Violation of California's Unfair Competition Law, Business and Professions Code § 17200;

f) Trespass to Personal Property / Chattels;

g) Unjust Enrichment

124.  On behalf of the Injunctive Class, Plaintiffs seek only injunctive relief.

125.  **Persons Excluded From Classes:** Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

126.  Plaintiffs reserve the right to revise these Class definitions of the Classes based on facts they learn during discovery.

127.  **Numerosity:**  The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains tens of thousands of members. The precise number of Class Members is unknown to Plaintiffs. The true number of Class Members is known by Defendant, however and, thus, Class Members may be notified of the pendency of this action by first Class mail, electronic mail, and by published notice. Upon information and belief, Class Members can be identified by the electronic records of Defendant.

128.  **Class Commonality:**  Pursuant to Federal Rules of Civil Procedure, Rule 23(a)(2) and Rule *23(b)(3)*, are satisfied because there are questions of law and fact common to Plaintiffs and the Class, which common questions predominate over any individual questions affecting only individual members, the common questions of law and factual questions include, but are not limited to:

a) What was the extent of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practice of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later and how did it work?

b) What information did Defendant Specific Media and SpecificClick Flash Cookie Affiliates' collect from its business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later, and what did it do with that information?

c) Whether SpecificClick Flash Cookie Affiliate users, by virtue of their visitation to SpecificClick Flash Cookie Affiliate's website, had pre-consented to the operation of Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later;

d) Was there adequate notice, or *any* notice, of the operation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later provided to Defendant Specific Media and SpecificClick Flash Cookie Affiliates' users?

e) Was there reasonable opportunity to decline the operation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later provided to Defendant Specific Media and SpecificClick Flash Cookie Affiliates' users?

f) Did Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later disclose, intercept, and transmit personally identifying information, or sensitive identifying information, or personal information?

g) Whether Defendant Specific Media and SpecificClick Flash Cookie Affiliates devised and deployed a scheme or artifice to defraud or conceal from Plaintiffs and the Class Defendant Specific Media and SpecificClick Flash Cookie Affiliates' ability to, and practice of, intercepting, accessing, and manipulating, for its own benefit, personal information, and tracking data from Plaintiffs' and the Class' personal information via the ability to; (and practice of) implanting secret "cookies" on their computers;

h) Whether Defendant Specific Media and SpecificClick Flash

Cookie Affiliates engaged in deceptive acts and practices in, connection with its undisclosed and systemic practice of implanting, accessing and/or disclosing unique identifiers, tracking data, and personal information on Plaintiffs and the Class' personal computers and using that data to track and profile Plaintiffs' and the Class' Internet activities and personal habits, proclivities, tendencies, and preferences for Defendant's use and benefit;

i) Did the implementation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later violate the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030?

j) Did the operation, function, and/or implementation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later violate California's Computer Crime Law, California Penal Code § 502?

k) Did the operation, function, and/or implementation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later violate the California Invasion of Privacy Act, California Penal Code § 630?

l) Did the operation, function, and/or implementation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' business practices of setting a Flash cookie on a user's computer to use its local storage within the Flash media player to back up browser cookies for the purpose of restoring them later unjustly enrich the Defendant herein?

m) Are the Defendant Specific Media and/or SpecificClick Flash Cookie Affiliates liable under a theory of aiding and abetting for violations of the statutes listed herein?

n) Are the Defendant Specific Media and/or SpecificClick Flash Cookie Affiliates liable under a theory of civil conspiracy for violations of the statutes listed herein?

o) Are the Defendant Specific Media and/or SpecificClick Flash Cookie Affiliates liable under a theory of unjust enrichment for violations of the statutes listed herein?

p) Whether Defendant Specific Media and SpecificClick Flash Cookie Affiliates participated in and/or committed or is responsible for violation of law(s) complained of herein;

q) Are Class Members entitled to damages as a result of the implementation of Defendant Specific Media and SpecificClick Flash Cookie Affiliates' marketing scheme, and, if so, what is the measure of those damages?

r) Whether Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct, and, if so, what is the appropriate measure of damages;

s) Whether Plaintiffs and members of the Class are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

t) Whether Plaintiffs and members of the Class are entitled to punitive damages, and, if so, in what amount.

129. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs and each member of the Class accessed a SpecificClick Flash Cookie Affiliate website and a Flash cookie was set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.

130. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel highly experienced in complex consumer Class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

131. **Superiority:** A Class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the

Class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

132.   In the alternative, the Class may be also certified because:

a) the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant;

b) the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Defendant have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

133.   The claims asserted herein are applicable to all persons throughout the United States that accessed a SpecificClick Flash Cookie Affiliate website and a Flash cookie was set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.

134.   The claims asserted herein are based on Federal law and California law, which is applicable to all Class Members throughout the United States.

135.   Adequate notice can be given to Class Members directly using information maintained in Defendant's records, or through notice by publication.

136.   Damages may be calculated from the information maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. The amount of damages is known with precision from Defendant's records.

## Count I
### Violation of the Computer Fraud and Abuse Act
### 18 U.S.C.  § 1030 *et seq.*
### By All Plaintiffs against Defendant

137.   Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

138.   Plaintiffs assert this claim against each and every Defendant named herein in this complaint on behalf of themselves and the Class.

139.   The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, referred to as "CFAA," regulates fraud and relates activity in connection with computers, and makes it unlawful to intentionally access a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, thereby obtaining information from such a protected computer, within the meaning of U.S.C. § 1030(a)(2)(C).

140.   Defendant violated 18 U.S.C. § 1030 by intentionally accessing a Plaintiffs' computer, without authorization or by exceeding access, thereby obtaining information from such a protected computer.

141.   The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), provides a civil cause of action to "any person who suffers damage or loss by reason of a violation" of CFAA.

142.   The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), makes it unlawful to "knowingly cause[s] the transmission of a program, information, code, or command and as a result of such conduct, intentionally cause[s] damage without authorization, to a protected computer," of a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

143.   Plaintiffs' computer is a "protected computer...which is used in interstate commerce and/or communication" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

144.   Defendant violated 18 U.S.C. § 1030(a)(2)(C) by intentionally

1   accessing a Plaintiffs' computer, without authorization or by exceeding access,

2   thereby obtaining information from such a protected computer.

3       145.   Defendant violated 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly

4   causing the transmission of a command embedded within their webpages,

5   downloaded to Plaintiffs' computer, which are protected computers as defined in

6   18 U.S.C. § 1030(e)(2)(B). By accessing, collecting, and transmitting Plaintiffs'

7   viewing habits, Defendant intentionally caused damage without authorization to

8   those Plaintiffs' computers by impairing the integrity of the computer.

9       146.   Defendant violated 18 U.S.C. § 1030(a)(5)(A)(ii) by intentionally

10   accessing Plaintiffs and Class Members' protected computers without

11   authorization, and as a result of such conduct, recklessly caused damage to

12   Plaintiffs and Class Members' computers by impairing the integrity of data and/or

13   system and/or information.

14       147.   Defendant violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally

15   accessing Plaintiffs and Class Members' protected computers without

16   authorization, and as a result of such conduct, caused damage  and loss to Plaintiffs

17   and Class Members.

18       148.   Plaintiffs have suffered damage by reason of these violations, as

19   defined in 18 U.S.C. § 1030(e)(8), by the "impairment to the integrity or

20   availability of data, a program, a system or information."

21       149.   Plaintiffs have suffered loss by reason of these violations, as defined

22   in 18 U.S.C. § 1030(e)(11), by the "reasonable cost ... including the cost of

23   responding to an offense, conducting a damage assessment, and restoring the data,

24   program, system, or information to its condition prior to the offense, and any

25   revenue lost, cost incurred, or other consequential damages incurred because of

26   interruption of service."

27       150.   Plaintiffs have suffered loss by reason of these violations, including,

28   without limitation, violation of the right of privacy, disclosure of personal

indentifying information, sensitive identifying information, and personal

information, interception, and transactional information that otherwise is private,

confidential, and not of public record.

151.   As a result of these takings, Defendant's conduct has caused a loss to

one or more persons during any one-year period aggregating at least $5,000 in

value in real economic damages.

152.   Plaintiffs and Class Members have additionally suffered loss by

reason of these violations, including, without limitation, violation of the right of

privacy.

153.   Defendant's unlawful access to Plaintiffs' computers and electronic

communications has caused Plaintiffs irreparable injury.  Unless restrained and

enjoined, Defendant will continue to commit such acts.  Plaintiffs' remedy at law is

not adequate to compensate it for these inflicted and threatened injuries, entitling

Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C.  §

1030(g).

**Count II**
**Violation of California's Computer Crime Law ("CCCL")**
**California Penal Code § 502**
**By All Plaintiffs against Defendant**

154.   Plaintiffs incorporate the above allegations by reference as if set forth

herein at length.

155.   Plaintiffs assert this claim against Defendant named herein in this

complaint on behalf of themselves and the Class.

156.   The California Computer Crime Law, California Penal Code § 502,

referred to as "CCCL" regulates "tampering, interference, damage, and

unauthorized access to lawfully created computer data and computer systems."

157.   Defendant violated California Penal Code § 502 by knowingly

accessing, copying, using, made use of, interfering, and/or altering, data belonging

1   to Plaintiffs and Class Members: (1) in and from the State of California; (2) in the

2   home states of the Plaintiffs; and (3) in the state in which the servers that provided

3   the communication link between Plaintiffs and the websites they interacted with

4   were located.

5        158.   Pursuant to California Penal Code § 502(b)(1), "Access means to

6   gain entry to, instruct, or communicate with the logical, arithmetical, or memory

7   function resources of a computer, computer system, or computer network."

8        159.   Pursuant to California Penal Code § 502(b)(6), "Data means a

9   representation of information, knowledge, facts, concepts, computer software,

10   computer programs or instructions. Data may be in any form, in storage media, or

11   as stored in the memory of the computer or in transit or presented on a display

12   device."

13        160.   Pursuant to California Penal Code § 502(b)(8), "Injury means any

14   alteration, deletion, damage, or destruction of a computer system, computer

15   network, computer program, or data caused by the access, or the denial of access to

16   legitimate users of a computer system, network, or program."

17        161.   Pursuant to California Penal Code § 502(b)(10) a "Computer

18   contaminant means any set of computer instructions that are designed to modify,

19   damage, destroy, record, or transmit information within a computer, computer

20   system, or computer network without the intent or permission of the owner of the

21   information. They include, but are not limited to, a group of computer instructions

22   commonly called viruses or worms, that are self-replicating or self-propagating and

23   are designed to contaminate other computer programs or computer data, consume

24   computer resources, modify, destroy, record, or transmit data, or in some other

25   fashion usurp the normal operation of the computer, computer system, or computer

26   network."

27        162.   Defendant has violated California Penal Code § 502(c)(1) by

28   knowingly accessing and without permission, altering, and making use of data

from Plaintiffs' computers in order to device and execute business practices to deceive Plaintiffs and Class Members into surrendering private electronic communications and activities for Defendant's financial gain, and to wrongfully obtain valuable private data from Plaintiffs.

163.   Defendant has violated California Penal Code § 502(c)(2) by knowingly accessing and without permission, taking, or making use of data from Plaintiffs' computers.

164.   Defendant has violated California Penal Code § 502(c)(3) by knowingly and without permission, using and causing to be used Plaintiffs' computer services.

165.   Defendant has violated California Penal Code § 502(c)(4) by knowingly accessing and without permission, adding and/or altering the data from Plaintiffs' computers.

166.   Defendant has violated California Penal Code § 502(c)(5) by knowingly and without permission, disrupting or causing the disruption of Plaintiffs' computer services or denying or causing the denial of computer services to Plaintiffs.

167.   Defendant has violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiffs' computers, computer system, and/or computer network.

168.   Defendant has violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiffs' computer, computer system, and/or computer network.

169.   Defendant has violated California Penal Code § 502(c)(8) by knowingly introducing a computer contaminant into the Plaintiffs' computer, computer system and/or computer network to obtain data regarding Plaintiffs' electronic communications.

170.   California Penal Code § 502(j) states: "For purposes of bringing a

1  civil or a criminal action under this section, a person who causes, by any means,

2  the access of a computer, computer system, or computer network in one

3  jurisdiction from another jurisdiction is deemed to have personally accessed the

4  computer, computer system, or computer network in each jurisdiction."

5       171.   Plaintiffs have also suffered irreparable injury from these

6  unauthorized acts of disclosure, to wit:  all of their personal, private, and sensitive

7  electronic communications have been harvested, viewed, accessed, stored, and

8  used by Defendant, and have not been destroyed, and due to the continuing threat

9  of such injury, have no adequate remedy at law, entitling Plaintiffs to injunctive

10  relief.

11       172.   Plaintiffs and Class Members have additionally suffered loss by

12  reason of these violations, including, without limitation, violation of the right of

13  privacy.

14       173.   As a direct and proximate result of Defendant's unlawful conduct

15  within the meaning of California Penal Code § 502, Defendant has caused loss to

16  Plaintiffs in an amount to be proven at trial.  Plaintiffs are also entitled to recover

17  their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

18       174.   Plaintiffs and the Class Members seek compensatory damages, in an

19  amount to be proven at trial, and injunctive or other equitable relief.

20       175.   Plaintiffs and Class Members have suffered irreparable and

21  incalculable harm and injuries from Defendant's violations. The harm will

22  continue unless Defendant is enjoined from further violations of this section.

23  Plaintiffs and Class Members have no adequate remedy at law.

24       176.   Plaintiffs and the Class Members are entitled to punitive or exemplary

25  damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violation

26  were willful and, on information and belief, Defendant is guilty of oppression,

27  fraud, or malice as defined in Cal. Civil Code § 3294.

28       177.   Defendant's unlawful access to Plaintiffs' computers and electronic

communications has caused Plaintiffs irreparable injury.  Unless restrained and enjoined, Defendant will continue to commit such acts.  Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by California Penal Code § 502(e).

## Count III
### Violation of the California Invasion of Privacy Act
### Penal Code section 630 et seq.
### By All Plaintiffs against Defendant

178.   Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

179.   Plaintiffs assert this claim against the California Defendant named herein in this complaint on behalf of themselves and the Class.

180.   California Penal Code section 630 provides, in part:

> Any person who, . . . or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable . . .

181.   On information and belief, each Plaintiff and each Class Member, during one or more of their interactions on the Internet during the Class period, communicated with one or more web entities based in California, or with one or more entities whose servers were located in California.

182.   Communications from the California web-based entities to Plaintiffs and Class Members were sent from California.  Communications to the California

1 | web-based entities from Plaintiffs and Class Members were sent to California.

2 |      183.   Plaintiffs and Class Members did not consent to any of the

3 | Defendant's actions in intercepting, reading, and/or learning the contents of their

4 | communications with such California-based entities.

5 |      184.   Plaintiffs and Class Members did not consent to any of the

6 | Defendant's actions in using the contents of their communications with such

7 | California-based entities.

8 |      185.   Defendant is not a "public utility engaged in the business of providing

9 | communications services and facilities . . ."

10 |      186.   The actions alleged herein by the Defendant was not undertaken: "for

11 | the purpose of construction, maintenance, conduct or operation of the services and

12 | facilities of the public utility."

13 |      187.   The actions alleged herein by the Defendant was not undertaken in

14 | connection with: "the use of any instrument, equipment, facility, or service

15 | furnished and used pursuant to the tariffs of a public utility."

16 |      188.   The actions alleged herein by the Defendants were not undertaken

17 | with respect to any telephonic communication system used for communication

18 | exclusively within a state, county, city and county, or city correctional facility.

19 |      189.   The Defendant directly participated in the interception, reading,

20 | and/or learning the contents of the communications between Plaintiffs, Class

21 | Members and California-based web entities.

22 |      190.   Alternatively, and of equal violation of the California Invasion of

23 | Privacy Act, the Defendant aided, agreed with, and/or conspired with Specific

24 | Media to unlawfully do, or permit, or cause to be done all of the acts complained

25 | of herein.

26 |      191.   Plaintiffs and Class Members have additionally suffered loss by

27 | reason of these violations, including, without limitation, violation of the right of

28 | privacy.

192.   Unless restrained and enjoined, Defendant will continue to commit such acts.  Pursuant to Section 637.2 of the California Penal Code, Plaintiffs and the Class have been injured by the violations of California Penal Code section 631. Wherefore, Plaintiffs, on behalf of themselves and on behalf of a similarly situated Class of consumers, seek damages and injunctive relief.

**COUNT IV**
**Violations of the Consumer Legal Remedies Act**
**("CLRA") California Civil Code § 1750, et seq.**
**By All Plaintiffs against Defendant**

193.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

194.   In violation of Civil Code section 1750, et seq. (the "CLRA"), Defendant has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiffs, and such transactions are intended to and have resulted in the sales of services to consumers. Plaintiffs and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendant's good or services for personal, family, or household purposes. Defendant's past and ongoing acts and practices include but are not limited to:

a) Defendant's representations that their services have characteristics, uses, and benefits that they do not have, in violation of Civil Code § 1770(a)(5);

b) Defendant's representations that their services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Codes § 1770(a)(7); and

c) Defendant's advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code § 1770(a)(9).

195.   Defendant's violations of Civil Code § 1770 have caused damage to Plaintiffs and the other Class Members and threaten additional injury if the

violations continue. This damage includes the losses set forth above.

196.   At this time, Plaintiffs seek only injunctive relief under this cause of action. Pursuant to California Civil Code, Section 1782, Plaintiffs will notify Defendant in writing of the particular violations of Civil Code, Section 1770 and demand that Defendants rectify the problems associated with their behavior detailed above, which acts and practices are in violation of Civil Code § 1770.

197.   If Defendant fails to respond adequately to Plaintiffs' above described demand within 30 days of Plaintiffs' notice, pursuant to California Civil Code, Section 1782(b), Plaintiffs will amend the complaint to request damages and other relief, as permitted by Civil Code, Section 1780.

### COUNT V
### Violations of the Unfair Competition Law ("UCL") California Business and Professions Code § 17200, et seq.
### By All Plaintiffs against Defendant

198.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

199.   In violation of California Business and Professions Code § 17200 et seq., Defendant's conduct in this regard is ongoing and includes, but is not limited to, unfair, unlawful and fraudulent conduct.

200.   By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiffs and the Class have suffered injury-in-fact and have lost money and/or property—specifically, personal information and/or registration fees.

201.   Defendant's business acts and practices are unlawful, in part, because they violate California Business and Professions Code § 17500, et seq., which prohibits false advertising, in that they were untrue and misleading statements relating to Defendant's performance of services and with the intent to induce consumers to enter into obligations relating to such services, and regarding statements Defendant knew were false or by the exercise of reasonable care

1  Defendants should have known to be untrue and misleading.

2  202.  Defendant's business acts and practices are also unlawful in that they

3  violate the California Consumer Legal Remedies Act, California Civil Code,

4  Sections 1647, et seq., 1750, et seq., and 3344, California Penal Code, section 502,

5  and Title 18, United States Code, Section 1030. Defendants are therefore in

6  violation of the "unlawful" prong of the UCL.

7  203.  Defendant's business acts and practices are unfair because they cause

8  harm and injury-in-fact to Plaintiffs and Class Members and for which Defendant

9  has no justification other than to increase, beyond what Defendant would have

10  otherwise realized, their profit in fees from advertisers and their information assets

11  through the acquisition of consumers' personal information. Defendant's conduct

12  lacks reasonable and legitimate justification in that Defendant has benefited from

13  such conduct and practices while Plaintiffs and the Class Members have been

14  misled as to the nature and integrity of Defendant's services and have, in fact,

15  suffered material disadvantage regarding their interests in the privacy and

16  confidentiality of their personal information. Defendant's conduct offends public

17  policy in California tethered to the Consumer Legal Remedies Act, the state

18  constitutional right of privacy, and California statutes recognizing the need for

19  consumers to obtain material information that enables them to safeguard their own

20  privacy interests, including California Civil Code, Section 1798.80.

21  204.  In addition, Defendant's modus operandi constitutes a sharp practice

22  in that Defendant knew, or should have known, that consumers care about the

23  status of personal information and email privacy but were unlikely to be aware of

24  the manner in which Defendant failed to fulfill their commitments to respect

25  consumers' privacy. Defendant is therefore in violation of the "unfair" prong of the

26  UCL.

27  205.  Defendant's acts and practices were fraudulent within the meaning of

28  the UCL because they are likely to mislead the members of the public to whom

they were directed.

## Count VI
### Trespass to Personal Property / Chattels
### By All Plaintiffs against Defendant

206.   Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

207.   The common law prohibits the intentional intermeddling with personal property, including a computer, in possession of another that results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property.

208.   By engaging in the acts alleged in this complaint without the authorization or consent of Plaintiffs and Class Members, Defendant dispossessed Plaintiffs and Class Members from use and/or access to their computers, or parts of them. Further, these acts impaired the use, value, and quality of Plaintiffs' and Class Members' computers. Defendant's acts constituted an intentional interference with the use and enjoyment of the computers. By the acts described above, Defendants, has repeatedly and persistently engaged in trespass to personal property in violation of the common law.

209.   Without Plaintiffs' and Class Members' consent, or in excess of any consent given, Defendant knowingly and intentionally accessed Plaintiffs' and Class Members' property, thereby intermeddling with Plaintiffs' and Class Members' right to possession of the property and causing injury to Plaintiffs and the members of the Class.

210.   Defendant engaged in deception and concealment in order to gain access to Plaintiffs and Class Members' computers.

211.   Defendant undertook the following actions with respect to Plaintiffs' and Class Members' computer:

a)  Defendant accessed and obtained control over the user's

1    computer;

2        b) Defendant caused the installation of a new code onto the hard

3           drive of the user's computer;

4        c) Defendant programmed the operation of its code to function and

5           operate without notice or consent on the part of the owner of the

6           computer, and outside of the control of the owner of the computer.

7    212.   All these acts described above were acts in excess of any authority

8    any user granted when he or she visited the SpecificClick Flash Cookie Affiliates'

9    websites and none of these acts was in furtherance of users viewing the

10   SpecificClick Flash Cookie Affiliates websites. By engaging in deception and

11   misrepresentation, whatever authority or permission Plaintiffs and Class Members

12   may have granted to SpecificClick Flash Cookie Affiliates was vitiated.

13   213.   Defendant's installation and operation of its program used, interfered,

14   and/or intermeddled with Plaintiffs' and Class Members' computer systems. Such

15   use, interference and/or intermeddling was without Class Members' consent or, in

16   the alternative, in excess of Plaintiffs' and Class Members' consent.

17   214.   Defendant's installation and operation of its program constitutes

18   trespass, nuisance, and an interference with Class Members' chattels, to wit, their

19   computers.

20   215.   Defendant's installation and operation of its program impaired the

21   condition and value of Class Members' computers.

22   216.   Defendant's trespass to chattels, nuisance, and interference caused

23   real and substantial damage to Plaintiffs and Class Members.

24   217.   As a direct and proximate result of Defendant's trespass to chattels,

25   nuisance, interference, unauthorized access of and intermeddling with Plaintiffs'

26   and Class Members' property, Defendant has injured and impaired in the condition

27   and value of Class Members' computers, as follows:

28        a) By consuming the resources of and/or degrading the performance

of Plaintiffs' and Class Members' computers (including hard drive space, memory, processing cycles, and Internet connectivity);

b) By diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiffs' and Class Members' computers;

c) By devaluing, interfering with, and/or diminishing Plaintiffs' and Class Members' possessory interest in their computers;

d) By altering and controlling the functioning of Plaintiffs' and Class Members' computers;

e) By infringing on Plaintiffs' and Class Members' right to exclude others from their computers;

f) By infringing on Plaintiffs' and Class Members' right to determine, as owners of their computers, which programs should be installed and operating on their computers;

g) By compromising the integrity, security, and ownership of Class Members' computers; and

h) By forcing Plaintiffs and Class Members' to expend money, time, and resources in order to remove the program installed on their computers without notice or consent.

## Count VII
### Unjust Enrichment
### By All Plaintiffs against Defendant

218. Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

219. Plaintiffs assert this claim against Defendant named herein in this complaint on behalf of themselves and the Class.

220. A benefit has been conferred upon all Defendants by Plaintiffs and the Class. On information and belief, Defendant, directly or indirectly, have received and retain information regarding online communications and activity of Plaintiffs,

and Defendant has received and retain information regarding specific purchase and transactional information that is otherwise private, confidential, and not of public record, and/or have received revenue from the provision of such information.

221.   Defendant appreciate or have knowledge of said benefit.

222.   Under principles of equity and good conscience, Defendants should not be permitted to retain the information and/or revenue which they acquired by virtue of their unlawful conduct.  All funds, revenues, and benefits received by Defendant rightfully belong to Plaintiffs and the Class, which Defendants have unjustly received as a result of its actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for judgment against Defendant as follows:

A. Certify this case as a Class action on behalf of the Classes defined above, appoint Plaintiffs as Class representatives, and appoint their counsel as Class counsel;

B. Declare that the actions of Defendant, as set out above, violate the following:

a) Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

b) California's Computer Crime Law, Penal Code § 502;

c) California's Invasion Of Privacy Act, California Penal Code § 630;

d) California's Consumer Legal Remedies Act, Civil Code § 1750;

e) California's Unfair Competition Law, Business and Professions Code § 17200;

f) Trespass to Personal Property / Chattels;

g) Unjust Enrichment

C. As applicable to the Classes *mutatis mutandis*, awarding injunctive and equitable relief including, *inter alia*: (i) prohibiting Defendant from engaging in the acts alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiffs and the other Class Members, or to whomever the Court deems appropriate; (iii) requiring Defendant to delete all data surreptitiously or otherwise collected through the acts alleged above; (iv) requiring Defendant to provide Plaintiffs and the other Class Members a means to easily and permanently decline any participation in any data collection activities; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully acquired by Defendant by means of the wrongful conduct alleged herein; and (vi) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

D. Award damages, including statutory damages where applicable, to Plaintiffs and Class Members in an amount to be determined at trial;

E. Award restitution against Defendant for all money to which Plaintiffs and the Classes are entitled in equity;

F. Restrain Defendant, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from continued access, collection, and transmission of Plaintiffs and Class Members' personal information via preliminary and permanent injunction;

G. Award Plaintiffs and the Classes:

   a) their reasonable litigation expenses and attorneys' fees;

   b) pre- and post-judgment interest, to the extent allowable;

   c) restitution, disgorgement and/or other equitable relief as the Court deems proper;

   d) compensatory damages sustained by Plaintiffs and all others similarly situated as a result of Defendant's unlawful acts and conduct;

   e) statutory damages, including punitive damages;

1       f)  permanent injunction prohibiting Defendant from engaging in the

2         conduct and practices complained of herein;

3

4    H. For such other and further relief as this Court may deem just and proper.

5

6  Dated this 17th day of August 2010

7

8                By:   David Parisi

9
David Parisi (SBN 162248)

10  dcparisi@parisihavens.com

11  Parisi & Havens LLP
15233 Valleyheart Drive

12  Sherman Oaks, California 91403

13  Telephone:   (818) 990-1299

14  Joseph H. Malley (not admitted)

15  malleylaw@gmail.com
Law Office of Joseph H. Malley

16  1045 North Zang Blvd

17  Dallas, TX 75208
Telephone: (214) 943-6100

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated this 17th day of August 2010

By:   David Parisi

David Parisi (SBN 162248)
dcparisi@parisihavens.com
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:   (818) 990-1299

Joseph H. Malley (not admitted)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100

# DECLARATION OF DAVID C. PARISI

I, David C. Parisi, hereby declare on oath as follows:

1.      I am an attorney licensed to practice law in the state of California.  I am over the age of 18 years and I have personal knowledge of the matters attested to herein.  If called upon to testify, I would and could competently do so.

2.      I make this declaration pursuant to California Civil Code section 1780(c) on behalf of my clients, plaintiffs Genevieve La Court, Deirdre Harris, Cahill Hooker, Bill Lathrop, Judy Stough, and E. H., a minor, by and through her parent, Jeff Hall, on behalf of themselves and all others similarly situated.

3.      Defendant Specific Media's principle executive offices and headquarters are located at 4 Park Plaza, Suite 1500, Irvine, California 92614.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Dated this 17th day of August 2010 at Sherman Oaks, California.

David C. Parisi

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| GENEVIVE LA COURT; DEIRDRE HARRIS; CAHILL HOOKER; BILL LATHROP; JUDY STOUGH; and E.H., a minor, by and through her parent, JEFF HALL; individuals, on behalf of themselves and others similarly situated | SPECIFIC MEDIA, INC., a Delaware Corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David C. Parisi, Suzanne Havens Beckman, Parisi & Havens LLP, 15233 Valleyheart Drive, Sherman Oaks, California 91403, (818) 990-1299 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff
□ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
□ 2 Removed from State Court
□ 3 Remanded from Appellate Court
□ 4 Reinstated or Reopened
□ 5 Transferred from another district (specify):
□ 6 Multi-District Litigation
□ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  □ No  □ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Viol. of: (1) 18 U.S.C. § 1030; (2) CA Pen. Code § 502; (3) CA Pen. Code  § 630; (4) CA Civ. Code § 1750; (5) CA B & P Code § 17200; (6) Trespass to Personal Property

**VII. NATURE OF SUIT** (Place an X in one box only.)    (7) Unjust Enrichment

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 535 Death Penalty | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | | □ 540 Mandamus/ Other | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 345 Marine Product Liability | BANKRUPTCY | □ 550 Civil Rights | □ 791 Empl. Ret. Inc. Security Act |
| | □ 151 Medicare Act | □ 350 Motor Vehicle | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | PROPERTY RIGHTS |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 355 Motor Vehicle Product Liability | □ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | □ 820 Copyrights |
| □ 490 Cable/Sat TV | | | | □ 610 Agriculture | □ 830 Patent |
| □ 810 Selective Service | | □ 360 Other Personal Injury | CIVIL RIGHTS | □ 620 Other Food & Drug | □ 840 Trademark |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 362 Personal Injury-Med Malpractice | □ 441 Voting | □ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 365 Personal Injury-Product Liability | □ 442 Employment | | □ 861 HIA (1395ff) |
| ☑ 890 Other Statutory Actions | □ 190 Other Contract | □ 368 Asbestos Personal Injury Product Liability | □ 443 Housing/Acco-mmodations | | □ 862 Black Lung (923) |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | | □ 444 Welfare | □ 630 Liquor Laws | □ 863 DIWC/DIWW (405(g)) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | IMMIGRATION | □ 445 American with Disabilities - Employment | □ 640 R.R. & Truck | □ 864 SSID Title XVI |
| □ 893 Environmental Matters | REAL PROPERTY | □ 462 Naturalization Application | | □ 650 Airline Regs | □ 865 RSI (405(g)) |
| □ 894 Energy Allocation Act | □ 210 Land Condemnation | □ 463 Habeas Corpus-Alien Detainee | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | FEDERAL TAX SUITS |
| □ 895 Freedom of Info. Act | □ 220 Foreclosure | □ 465 Other Immigration Actions | □ 440 Other Civil Rights | □ 690 Other | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 230 Rent Lease & Ejectment | | | | □ 871 IRS-Third Party 26 USC 7609 |
| □ 950 Constitutionality of State Statutes | □ 240 Torts to Land | | | | |
| | □ 245 Tort Product Liability | | | | |
| | □ 290 All Other Real Property | | | | |

## SACV10-01256

FOR OFFICE USE ONLY:    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 2:10-cv-05484-GW

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)　☐ A. Arise from the same or closely related transactions, happenings, or events; or

　　　　　　　　　　　　☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or

　　　　　　　　　　　　☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

　　　　　　　　　　　　☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐　Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Other States: Texas; Nevada |

(b)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐　Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Other States: Texas; Nevada |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____　Date August 17, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1256 JVS (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[X] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
David C. Parisi (SBN 162248)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California  91403
Telephone: (818) 990-1299

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| GENEVIVE LA COURT; See attachment A for additional plaintiffs | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | |
| v. | **SACV10-01256 JVS VBKx** |
| SPECIFIC MEDIA, INC.,  a Delaware Corporation, | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  David C. Parisi _____ , whose address is  Parisi & Havens LLP, 15233 Valleyheart Drive, Sherman Oaks, California  91403 _____ .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  _____ AUG  1 9  2010 _____         By: ___ CHRISTOPHER POWERS ___

Deputy Clerk

*(Seal of the Court)*

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## ATTCHMENT A
### Attachment to Summons
### Case Number: _____

**Additional Plaintiffs:**

DEIRDRE HARRIS; CAHILL HOOKER; BILL LATHROP; JUDY
STOUGH; and E.H., a minor, by and through her parent, JEFF HALL;
individuals, on behalf of themselves and others similarly situated

**ATTACHMENT A**
**Attachment to Summons**