1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

--------------------------------------------------------x
                             :

IN RE CLEARSPRING
FLASH COOKIE LITIG.,           :   No. 2:10-cv-05948-GW-JCG

                             :

IN RE QUANTCAST
ADVERTISING COOKIE LITIG.  :   No. 2:10-cv-05484-GW-JCG

                             :
--------------------------------------------------------x

-

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 3 of 37   Page ID
#:331
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 3 of 76   Page ID
#:350

## SETTLEMENT AGREEMENT

Representative Plaintiffs, on behalf of themselves and all Class Members, on the one hand, and, on the other hand, defendants Quantcast Corporation ("Quantcast"); Clearspring Technologies, Inc. ("Clearspring"); American Broadcasting Companies, Inc.; Demand Media, Inc.; ESPN, Inc.; Fox Entertainment Group, Inc.; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc; Scribd, Inc.; Soapnet, LLC; Walt Disney Internet Group; and Warner Bros. Records Inc. ("Defendants"); and certain Defendants' affiliated Undertaking Parties (as defined below) hereby enter into this Stipulation and Agreement of Settlement ("Settlement Agreement"), subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## I.   CERTAIN DEFINITIONS

The capitalized terms as used in this Settlement Agreement are defined as follows:

1.1.    Class: All persons in the United States who, during the Class Period, used any web browsing program on any device to access one or more web sites or online content controlled, operated, or sponsored by Defendants or the Undertaking Parties, or any other website employing any of Clearspring's or Quantcast's technologies involving the use of HTTP cookies ("Cookies") or local shared objects stored in Adobe Flash Player local storage ("LSOs").

1.2.    Class Counsel: the attorneys appointed by the Court as Interim Class Counsel in the Litigation, namely, KamberLaw, LLC, Scott A. Kamber and David A. Stampley of KamberLaw, LLC.

1.3.    Class Member: a Person who falls within the definition of the Class set forth in subsection 1.1 herein and who does not opt out as provided herein.

1.4.    Class Period: the period from June 1, 2008 through the Preliminary Approval Date.

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 4 of 37   Page ID
#:332
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 4 of 76   Page ID
#:351

1.5.     Complaints: the class action complaints on file in *Valdez, et. al. v. Quantcast Corporation, et al.*, Case No. 2:10-cv-05484-GW (C.D. Cal.); *Aguirre v. Quantcast Corporation, et al.*, Case No. 2:10-cv-05716-GW (C.D. Cal.); *White, et al. v. Clearspring Technologies, Inc., et al.*, Case No. 2:10-cv-05948-GW (C.D. Cal.); *Intzekostas v. Fox Entertainment Group, Inc., Inc., et al.*, Case No. 2:10-cv-06586-GW (C.D. Cal.); *Godoy v. Quantcast Corporation*, Case No. 2:10-cv-07662-GW (C.D. Cal.); and *Rona v. Clearspring Technologies Inc.*, Case No. 2:10-cv-7786-GW (JCGx) (C.D. Cal.); and any amended and/or consolidated complaints filed in the consolidated actions captioned *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG, as of the Effective Date of this Settlement Agreement.

1.6.     Court: the United States District Court for the Central District of California.

1.7.     Defense Counsel: Defense Counsel consists of the following: (i) Michael G. Rhodes of Cooley LLP (for Clearspring); Michael H. Page of Durie Tangri LLP (for Quantcast); Jeffrey S. Jacobson of Debevoise & Plimpton LLP (for American Broadcasting Companies, Inc.; ESPN, Inc.; Fox Entertainment Group, Inc.; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc.; Scribd, Inc.; Soapnet, LLC and Walt Disney Internet Group); Ian Ballon of Greenberg Traurig LLP (for Demand Media, Inc.); and Sherman Kahn of Morrison & Foerster LLP (for Warner Bros. Records Inc., an affiliate of Warner Music Inc.).

1.8.     Effective Date: the first date on which all of the events and conditions specified in subsection 8.1 of this Settlement Agreement have occurred.

1.9.     Fee Application: an application by Class Counsel to the Court for an award of Class Counsel's attorneys' fees, incentive awards to Representative Plaintiffs, and reimbursement to Class Counsel of actual expenses and costs incurred in connection with the Litigation, as well as any interest thereon.

1.10.     Fee Award: an order by the Court granting Class Counsel's Fee Application in whole or in part.

Settlement Agreement                    2

1.11.   <u>Final</u>: (a) if no appeal from the Judgment is filed, the expiration of the time for the filing or noticing of any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, and no petition for a writ of certiorari ("Writ Petition") with respect to the appellate court's judgment affirming the Judgment or dismissing the appeal ("Appellate Judgment") is filed, the expiration of the time for the filing of a Writ Petition; or (c) if a Writ Petition is filed and denied, the denial of the Writ Petition; or (d) if a Writ Petition is filed and granted, the final affirmance of the Appellate Judgment or final dismissal of the review proceeding initiated by the Writ Petition. Any proceeding, order, appeal, or Writ Petition pertaining solely to the Fee Award or the plan for allocation of the Settlement Fund will not in any way delay or preclude the Judgment from becoming Final.

1.12.   <u>Judgment or Final Approval Order and Judgment</u>: the Final Judgments and Orders of Dismissal With Prejudice to be entered by the Court, substantially in the form attached hereto as Exhibit A.4.

1.13.   <u>Litigation</u>: Collectively, the putative class actions referenced in the definition of Complaints above.

1.14.   <u>Mediator</u>: Rodney Max of Upchurch Watson White & Max, 125 South Palmetto Avenue, Daytona Beach, Florida 32114.

1.15.   <u>Net Settlement Fund</u>: the Settlement Fund less all Administrative Costs (as defined in section IV.C, below), the Fee Award, and any taxes or tax expenses.

1.16.   <u>Notice</u>: the Legal Notice of Proposed Class Action Settlement substantially in the form attached hereto as Exhibit A.2 ("Publication Notice") and the Notice of Pendency of Class Action and Proposed Settlement substantially in the form attached hereto as Exhibit A.3 ("Longform Notice"), to be distributed in accordance with the terms of section IV.A, below, for the purpose of notifying the Class Members of the pendency of the Litigation, the material terms of the proposed Settlement, and Class Members' options with respect thereto.

1.17.   <u>Parties</u>: the parties to the Litigation, *i.e.*, the Representative Plaintiffs and the Defendants (as distinct from Settling Parties, defined below).

Settlement Agreement                          3

Case 8:10-cv-01256-GW -JCG Document 26-2 Filed 03/09/11 Page 6 of 37 Page ID
#:334
Case 2:10-cv-05484-GW -JCG Document 45-2 Filed 12/03/10 Page 6 of 76 Page ID
#:353

1.18.   Person: an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

1.19.   Preliminary Approval Date: the date entered by the Court on a Preliminary Approval and Notice Order.

1.20.   Preliminary Approval and Notice Order: a Court order, substantially in the form attached hereto as Exhibit A.1, providing for, among other things, preliminary approval of the Settlement and dissemination of the Notice to the Class in each of the matters in which preliminary approval is sought for the Settlement Agreement.

1.21.   Protected Persons: Defendants and the Undertaking Parties, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, investors, customers, partners, joint-venturers, parents, subsidiaries (defined as any entity in which a Defendant or Undertaking Party owns or controls, directly or indirectly, at least 50% of the voting securities or the right to elect a majority of the members of the board of directors, or by contract or otherwise controls such entity, or has the right to direct the management of such entity), affiliates, attorneys, successors and assigns; as well as all Persons that used, deployed or caused the deployment of, in online interactions with Class Members, Clearspring's Launchpad and/or Add This products; and all Persons in connection with whom defendants Quantcast, Clearspring, or an Undertaking Party deposited a Cookie or an LSO on a computer or device owned, controlled, or used by a Class Member.

1.22.   Released Claims: Any and all claims for payment, non-economic or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, based on any of the laws, regulations, statutes or rules cited, evidenced or referenced by such allegations and statements, or any other claims, including but not limited to: all claims, including unknown claims, as set forth in Section 5.3 below, arising from or relating

to (i) any of the allegations, facts or statements set out in, or to any claim that was or could have been brought in any of the Complaints; (ii) Defendants', the Undertaking Parties' and their subsidiaries' and affiliates' use of LSOs; alleged depositing of Cookies or LSOs on the computers of persons who accessed one or more of Defendants', the Undertaking Parties' or their subsidiaries' or affiliates' websites or other online content (in the case of the Undertaking Parties, their subsidiaries and affiliates, whether such Cookies or LSOs were deposited by or through an Undertaking Party, a subsidiary or affiliate thereof, Quantcast, Clearspring or any other Person); the regeneration or redeposit of Cookies after a user deleted those Cookies; or the alleged obtaining or provision of information from or about a user contrary to either the user's consent or intent; and (iii) claims that Defendants, the Undertaking Parties or their subsidiaries or affiliates allegedly tracked users, shared their information or displayed advertising to them without sufficient notice. Without limiting the foregoing, for avoidance of doubt, the definition of Released Claims is intended to provide any Protected Person that is an Undertaking Party or a subsidiary or affiliate thereof with a full release from all claims Class Counsel presently is pursuing involving LSOs and similar technologies in other cases, specifically: *Davis v. VideoEgg, Inc.*, No. CV 10 7112 (C.D. Cal.); *La Court v. Specific Media, Inc.*, No. 10-CV-1256 JVS (C.D. Cal.); *Aughenbaugh v. Ringleader Digital, Inc.*, No. 10-CV-1407-CJC-RNB (C.D. Cal.); and *Hillman v. Ringleader Digital, Inc.*, No. 10-CV-8315 (S.D.N.Y.); and such other similar case(s) as to which the Parties may agree in writing from time to time prior to the date approved by the Court for persons to object to or exclude themselves from the Settlement, which agreement shall not be unreasonably withheld by any Party and which writing(s) shall be deemed as amending and incorporated into this section 1.22. Notwithstanding the foregoing, excluded from Released Claims are all claims related to the use or deployment of non-Quantcast and non-Clearspring LSOs by any Person other than the Defendants or the Undertaking Parties.

1.23.    Representative Plaintiffs: The Representative Plaintiffs are, subject to Court approval: Jennifer Aguirre; A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 8 of 37   Page ID
#:336
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 8 of 76   Page ID
#:355

parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J.  Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez ; Kayla Valdez, and Brian White; as well as any others appointed by the Court in the Preliminary Approval and Notice Order to serve as Representative Plaintiffs.

1.24.   Settlement: the terms of settlement set forth in this Settlement Agreement.

1.25.   Settlement Fund: the total sum of two million four hundred thousand dollars ($2,400,000), which shall be paid in accordance with this Settlement Agreement.

1.26.   Settling Parties: Defendants, the Representative Plaintiffs, the Undertaking Parties and all Class Members.

1.27.   Undertaking Parties: Defendants Demand Media, Inc.; Hulu, LLC; JibJab Media, Inc.; NBC Universal, Inc.; and Scribd, Inc.; News Corporation, an affiliate and the ultimate parent of Defendants Fox Entertainment Group, Inc. and MySpace, Inc.; Viacom Inc., of which Defendant MTV Networks is a division of a subsidiary, Viacom International Inc.; and The Walt Disney Company, of which Defendants American Broadcasting Companies, Inc., ESPN, Inc., Soapnet, LLC and Walt Disney Internet Group are subsidiaries, and Warner Music Inc., of which Warner Brothers Records Inc. is an affiliate.

1.28.   The plural of any term defined herein includes the singular, and vice versa.

## II.    INTRODUCTION

### A.    Background of the Settlement

2.1.   On July 23, 2010 and July 30, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* Complaints were filed against Quantcast (and other defendants). Collectively, these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510; (iii) the Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Computer Crime Law, Penal Code § 502; (v) California's Invasion of Privacy Act, California Penal Code § 630;

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 9 of 37   Page ID
#:337
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 9 of 76   Page ID
#:356

(vi) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vii) the California Consumer Legal Remedies Act; (viii) Unjust Enrichment; and (ix) California Uniform Trade Secrets Act, California Civil Code § 3426. On September 21, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* actions were consolidated by order of the court in the Central District of California as *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG. The Complaint in *Godoy v. Quantcast Corporation*, filed October 13, 2010, was determined by the Court to be related to the foregoing matters.

2.2.    The Complaints in *White, et al. v. Clearspring Technologies, Inc., et al.*, *Intzekostas v. Fox Entertainment Group, Inc., et al.,* and *Rona v. Clearspring Technologies, Inc.* were filed respectively on August 10, 2010, September 10, 2010, and October 18, 2010, alleging claims against Clearspring (and other defendants). Collectively these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (ii) California's Computer Crime Law, Penal Code § 502; (iii) California's Invasion of Privacy Act, California Penal Code § 630; (iv) the California Consumer Legal Remedies Act, California Civil Code § 1750; (v) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vi) Trespass to Personal Property/Chattels; (vii) Unjust Enrichment; and (viii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510. On October 13, 2010, the *White, et al. v. Clearspring Technologies, Inc., et al.* and *Intzekostas v. Fox Entertainment Group, Inc., et al.* actions were consolidated by order of the court in the Central District of California as *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG.

2.3.    The Court has found that all of the matters referred to in sections 2.1 and 2.2, above, are related actions.

2.4.    Commencing in October 2010, the Parties conducted a series of settlement negotiations including, among other things, an in-person mediation conducted by the Mediator on October 19, 2010, during which the Parties each represent that they have candidly aired the strengths and weaknesses in their respective litigation positions.

2.5.    At the October 19, 2010 mediation, the Parties tentatively reached an agreement in principle for the resolution of all claims alleged against Defendants in the Litigation, subject to additional negotiations and the Parties' thereafter reaching agreement on final settlement documentation, including this Settlement Agreement.

**B.    Defendants' and Undertaking Parties' Denial of Wrongdoing and Liability**

2.6.    Defendants and the Undertaking Parties deny any and all wrongdoing whatsoever. Nothing in this Settlement Agreement shall be construed, interpreted, or deemed to be evidence of or an admission, presumption, or concession on the part of any Defendant or Undertaking Party of any fault, liability, or wrongdoing as to any facts or claims asserted in the Litigation (or any infirmity in the defenses that Defendants have asserted or could assert in the Litigation) or in any other actions or proceedings. Nothing in this Settlement Agreement may be invoked, offered, adduced, or received in evidence or otherwise used against any Defendant or Undertaking Party in the Litigation or in any other action or proceeding, whether civil, criminal, or administrative.

**C.    The Settlement Is Fair, Adequate, and Reasonable**

2.7.    Class Counsel have conducted extensive research and investigation relating to the claims and the underlying events and transactions alleged in the Complaint during the prosecution of the Litigation which have included: (a) interviews of the Representative Plaintiffs and analysis of their computers to assess the potential claims of each individual; (b) the review of public statements, including consumer-facing statements on Defendants' websites, press releases attributed to Defendants, and articles about Defendants; (c) analysis of Defendants' interactions with web browsers; and (d) research of the applicable law with respect to the claims asserted in the Complaint and arguments asserted by Defendants. Although Class Counsel believe the claims asserted against Defendants in the Litigation have substantial merit, Class Counsel recognize and acknowledge that continued prosecution of the Litigation through trial and possible appeal would be protracted and expensive.

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 11 of 37   Page ID
#:339
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 11 of 76   Page ID
#:358

2.8.    Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation against Defendants.

2.9.    As noted, Class Counsel have conducted extensive discussions and arm's-length negotiations with Defense Counsel including with the assistance of the Mediator, with respect to a resolution of the claims in the Litigation against Defendants and with the goal of achieving the best relief possible consistent with the interests of the Class and the strengths and weaknesses of the claims and defenses asserted in the Litigation.

2.10.   Based on evaluation of all of these factors, Class Counsel have concluded in light of the applicable law that the terms of the Settlement are fair, adequate, and reasonable, and that it is desirable and in the best interests of the Representative Plaintiffs and all Class Members that the Litigation be fully and finally settled as against Defendants and the Undertaking Parties on the terms set forth in this Settlement Agreement.

**NOW THEREFORE,** in consideration of the promises and mutual covenants set forth herein, it is hereby STIPULATED AND AGREED, by and among the Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and satisfaction of all the terms and conditions set forth herein, that the Litigation and all Released Claims shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms.

## III.    **CLASS CERTIFICATION**

3.1     The Parties stipulate to the certification of the Class, for settlement purposes only, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

3.2     The class certification contemplated by this Settlement Agreement is for purposes of settlement only, and nothing in this Settlement Agreement shall constitute, in this or in any other action or proceeding, an admission by any Defendant or Undertaking Party or a finding or

Case 8:10-cv-01256-GW  -JCG   Document 26-2   Filed 03/09/11   Page 12 of 37   Page ID
#:340
Case 2:10-cv-05484-GW  -JCG   Document 45-2   Filed 12/03/10   Page 12 of 76   Page ID
#:359

evidence that any claims that either were brought or could have been brought in the Litigation are appropriate for class treatment or that any requirement for class certification is or could otherwise be satisfied. By entering into this Settlement Agreement, Defendants and the Undertaking Parties in no way waive their right to challenge or contest the continued maintenance of the Litigation or any other lawsuit or class action and to oppose certification of any class or otherwise oppose the claims of the class for litigation purposes. Nor may the fact that a Defendant or Undertaking Party entered into this Settlement Agreement be offered, received, or construed as an admission, finding, or evidence, for any purpose, including the appropriateness of class certification, except for purposes of enforcing this Settlement Agreement.

## IV.    SETTLEMENT CONSIDERATION

### A.    Dissemination of the Notice

In accordance with the dates set forth in the Preliminary Approval and Notice Order:

4.1.    During the Notice period, Defendants shall cause the Court-approved summary form of Publication Notice substantially in the form attached hereto as Exhibit A.2 and Longform Notice substantially in the form attached hereto as Exhibit A.3, and believed by the Parties to be the best practicable notice, and which shall be national in scope, to be published in accordance with a plan to be agreed to among the parties and submitted to the Court in conjunction with the filing of this Settlement Agreement with the Court. The cost of publication of the Publication Notice and Longform Notice shall constitute an Administrative Cost and be paid from the Settlement Fund. For both the *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW consolidated actions, all notices disseminated under this Settlement Agreement shall be consolidated for all purposes, including administration and dissemination. Notices to Class Members will include Clearspring's representation that cookies deposited by Clearspring during the Class Period can be identified by an origin domain of "clearspring.com"; LSOs deposited by

Settlement Agreement                         10

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 13 of 37   Page ID
#:341
Case 2:10-cv-05484-GW -JCG   Document 43-2   Filed 12/03/10   Page 13 of 76   Page ID
#:360

Clearspring during the Class Period can be identified by an origin domain of "clearspring.com" and a filename of "clearspring.sol." Notices to Class Members will include Quantcast's representation that cookies and LSOs deposited by Quantcast during the Class Period can be identified either by a filename including the string "__qca" or the string "Quantserve." Notices to Class Members will include Quantcast and Clearspring's representation that, because tens of millions of web pages used Clearspring or Quantcast technology, the Class, accordingly, is comprised of substantially all internet users in the United States.

4.2.     To the extent that additional notices to the Class are ordered by the Court or become necessary for the Court's approval of the Settlement Agreement, such additional notices may be made in the same manner as the original Notice, and the out-of-pocket costs, if any, of any additional notices, will constitute Administrative Costs and will be reimbursed to Defendants from the Settlement Fund.

4.3.     Within ten (10) days of the filing of the Settlement Agreement with the Court, Defendants shall properly notify the appropriate state and federal officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**B.     Settlement Fund**

4.4.     The Settlement Fund shall consist of a total of two million four hundred thousand dollars ($2,400,000.00), to be paid by or at the direction of defendants Quantcast and Clearspring. The Settlement Fund shall be kept under the control and possession of those Defendants until a date no later than twenty (20) days after Preliminary Approval, at which time the Settlement Fund shall be deposited by or at the direction of those Defendants into a separate bank account specifically established by those Defendants for purpose of effecting this Settlement.

4.5.     Not later than thirty (30) days prior to the deadline set by the Court for Class Members to opt out of the Settlement Class or object to the Settlement Agreement, Plaintiffs shall submit for the Court's approval the plan for allocating and distributing such funds in the

Settlement Agreement                    11

Net Settlement Fund for which allocation and distribution are not otherwise set forth herein (the "Allocation and Distribution Plan"). The Allocation and Distribution Plan shall detail Plaintiff's proposal for allocating and distributing funds in the form of *cy pres* relief to one or more non-profit organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers. The Allocation and Distribution Plan shall specify that such projects and activities shall exclude the sponsorship or funding of litigation or lobbying efforts regarding specific legislation.

### C.   Administrative Costs

4.6.    Subject to the Court's approval of a submission made by Plaintiffs, the Settlement Fund will be applied to payment of the reasonable costs incurred administering the Settlement, including but not limited to the out-of-pocket costs of dissemination of the Notice pursuant to section IV.A and retaining a settlement administrator ("Administrative Costs"); provided, and notwithstanding any other provision of this section IV.C, in no event shall Administrative Costs include Defendants' and/or Undertaking Parties' internal administrative costs.

4.7.    All Administrative Costs that are reasonably and necessarily incurred prior to the Effective Date shall be advanced from the Settlement Fund, subject to prior approval by Class Counsel and Defense Counsel.

4.8.    Under no circumstances will the Representative Plaintiffs, Class Counsel, or any Class Member have any liability for Administrative Costs under the Settlement. If the Settlement is terminated or fails to become Final for any reason, defendants Quantcast and Clearspring will absorb such costs in their entirety.

4.9.    Within twenty (20) days of the Court's issuance of the Preliminary Approval and Notice Order, defendants Quantcast and Clearspring shall transfer to a third-party class action administrator to be designated by Class Counsel the sum of seven hundred fifty thousand dollars ($750,000.00) to be used to cover the anticipated Administrative Costs. Such amount shall be

deducted from the Settlement Payment as a credit therefrom. In the event that the Court refuses to approve the settlement for any reason, then the class action administrator shall promptly account to Defendants' counsel for the amount of actual expenses incurred in connection with the administration of this settlement and return to Defendants the unused balance.

4.10.   Any disputes over the propriety of any Administrative Costs or the reimbursement thereof from the Settlement Fund shall be resolved by the Mediator in the manner directed by the Mediator.

### D.    **Attorneys' Fees, Expenses, and Incentive Awards**

4.11.   Class Counsel have not received any payment for prosecuting this case on behalf of Representative Plaintiffs and Members of the Class, nor have they been reimbursed for their out-of-pocket expenses. On or before the date specified in the Preliminary Approval and Notice Orders, Class Counsel will submit their Fee Application requesting approval of a Fee Award consisting of an award of attorneys' fees in an amount of up to one-quarter (25 percent) of the Settlement Fund as defined in Section 1.25. Defendants agree that a request by Class Counsel for a Fee Award of that or any lesser amount is fair and reasonable and they will not object to or otherwise challenge Class Counsels' Fee Application from the Settlement Fund. Class Counsel have, in turn, agreed not to seek more than said amount from the Court.

4.12.   The amount of any Fee Award, costs and expenses shall be paid from the Settlement Fund. In the event the Settlement is not finally approved, Defendants are under no obligation to pay, directly, indirectly or out of the Settlement Fund, Class Counsel's fees, costs or expenses.

4.13.   Defendants Quantcast and Clearspring will pay the Fee Award from the Settlement Fund within ten (10) business days after the Settlement becomes Final.

4.14.   The Fee Application and the Court's decision to grant or deny it, in whole or in part, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceedings relating to the Fee

Case 8:10-cv-01256-GW -JCG  Document 26-2  Filed 03/09/11  Page 16 of 37  Page ID
#:344
Case 2:10-cv-05484-GW -JCG  Document 48-2  Filed 12/03/10  Page 16 of 76  Page ID
#:363

Application or Fee Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment approving the Settlement and this Settlement Agreement. No order of the Court or modification or reversal on appeal of any order of the Court reducing any Fee Award shall constitute grounds for cancellation or termination of this Agreement.

4.15.   In addition to any benefits afforded under the Settlement, and in recognition of their efforts on behalf of the Class, each Representative Plaintiff shall, subject to Court approval, receive $1,500 as appropriate compensation for time and effort serving as a Representative Plaintiff in the Litigation. Defendants Quantcast and Clearspring shall pay such amount from the Settlement Fund to the Representative Plaintiffs, in care of Class Counsel, within ten (10) business days after the Settlement becomes Final.

4.16.   Except as otherwise provided in this section, or as governed by pre-existing agreements among Defendants, each Party will bear his/her/its own costs of suit, including attorneys' fees, incurred in bringing or defending against the Litigation.

**E.      Tax Liability For Settlement Fund**

4.17.   Under no circumstances will the Defendants or Defense Counsel have any liability for taxes or tax expenses under the Settlement.

**G.      Non-Monetary Relief**

4.18.   Nothing in this document shall be construed to relieve any Defendant or Undertaking Party from any law, regulation, or contractual obligation that may impose different or more stringent requirements than those set forth in this document. Should a Defendant or Undertaking Party be subject to a law or regulation imposing obligations inconsistent with the requirements of this document, such law or regulation shall control.

4.19.   In connection with this Settlement, Quantcast and Clearspring represent that they do not presently, and will not in the future, employ LSOs to: (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 17 of 37   Page ID
#:345
Case 2:10-cv-05484-GW -JCG   Document 43-2   Filed 12/03/10   Page 17 of 76   Page ID
#:364

browsing history, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies.

4.20.   Reference is made to (i) the 2008 Network Advertising Initiative Principles (the "NAI Principles"); and (ii) the "Self Regulatory Principles for Online Behavioral Advertising" available at http://www.iab.net/media/file/ven-principles-07-01-09.pdf (the "Self-Regulatory Principles").

4.20.1.   Within thirty (30) days of entry of the Preliminary Approval and Notice Orders in each matter in which Preliminary Approval of this Settlement Agreement is sought, the Undertaking Parties shall send a request to at least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted. Additionally, the Undertaking Parties shall request that the Self-Regulatory Principles be amended to include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's web browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content. If an Undertaking Party is a member of the Network Advertising Initiative, the Undertaking Party also shall inform the Network Advertising Initiative of its preference that the NAI Principles be similarly amended.

4.20.2.   No Undertaking Party shall, in an official capacity in any public or industry forum, take a position contrary to those stated in Paragraph 4.20.1. To the extent an Undertaking Party has decision-making authority in any of the above-mentioned bodies, that Undertaking Party shall use its decision-making authority to attempt to effect such preferences.

4.20.3.   Each Undertaking Party shall, (i) in its online Privacy Policy or an opt-out page clearly linked thereto: maintain a link to the Network Advertising Initiative "Opt Out of

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 18 of 37   Page ID
#:346
Case 2:10-cv-05484-GW -JCG   Document 49-2   Filed 12/03/10   Page 18 of 76   Page ID
#:365

Behavioral Advertising" tool, presently located at http://www.networkadvertising.org/manag-ing/opt_out.asp or, once it is fully implemented for consumers, to the industry-developed website page currently represented by http://www.aboutads.info/consumers/; or, on the Undertaking Party's own internet home page, maintain a link to a page with substantially the same informa-tion and consumer options; or (ii) once it is fully implemented for consumers, display the "Advertising Option Icon" discussed in the Self-Regulatory Principles, which links to an OBA disclosure statement and opt-out mechanism. A link to the Undertaking Party's online Privacy Policy or the Advertising Option Icon shall be displayed on the home page of each Undertaking Party's U.S. consumer-oriented website(s) and on at least a significant number of those consumer-oriented web pages of the Undertaking Party's U.S. consumer-oriented website(s) on which consumer data is collected or used for advertising.

       4.20.4.    If, after the Settlement becomes Final, an Undertaking Party or its agents deposit LSOs on the computers of users who visit one or more of its U.S. consumer-oriented websites or interact with its widgets or other applications on such websites, the Undertaking Party shall include, in its online Privacy Policy, a disclosure of its use of LSOs and a link to at least one website or utility offering users the ability to manage LSOs, if such website or utility is available. By linking to such a third-party website or utility in order to comply with this Agreement, the Undertaking Party will not assume responsibility for the functionality or any other aspect of such website or utility. If one or more of the Undertaking Party's websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs, the Undertaking Party shall so disclose in its Privacy Policy.

       4.20.5.    An Undertaking Party's Privacy Policy, links to which shall appear as specified above in Paragraph 4.20.3, shall include an email address or other online reporting mechanism to which members of the public can send any privacy-related concerns respecting the operation of the Undertaking Party's websites. The Undertaking Party will regularly review

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 19 of 37   Page ID
#:347
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 19 of 76   Page ID
#:366

messages sent to this address or mechanism, but need not individually review duplicative or cumulative messages appearing to have emanated from or at the behest of the same source.

       4.20.6.     These provisions shall remain in effect until June 30, 2013. Except in the event of willful noncompliance, should an Undertaking Party discover or be informed as set forth in Section 4.20.5 of any instance of non-compliance with the above provisions, that Undertaking Party shall have thirty (30) calendar days after such discovery or information to cure such breach before being considered in breach of this Settlement Agreement.

## V.    <u>RELEASES</u>

       5.1.     Upon the Effective Date, each of the Representative Plaintiffs and each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Protected Persons from all Released Claims.

       5.2.     The Representative Plaintiffs, on behalf of all Class Members, acknowledge and agree that they have read and understand the contents of Section 1542 of the Civil Code of the State of California, and, to the fullest extent permitted by law, the Representative Plaintiffs and all Class Members expressly, knowingly, intentionally, and irrevocably waive any and all rights and benefits that they may have under Section 1542 or any other similar state or federal statute, or common law or other legal principle. Section 1542 reads as follows:

> **Section 1542. (General Release - Claims Extinguished) A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

       5.3.     The Representative Plaintiffs and one or more Class Members may hereafter discover facts different from or in addition to those that they now know or believe to be true with respect to the releases provided for in this section V. Nevertheless, the Representative Plaintiffs

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 20 of 37   Page ID
#:348
Case 2:10-cv-05484-GW -JCG   Document 43-2   Filed 12/03/10   Page 20 of 76   Page ID
#:367

and all Class Members hereby expressly waive and release upon the Effective Date any and all Released Claims, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, contingent or non-contingent, without regard to the subsequent discovery or existence of such different or additional facts.

5.4.     Notwithstanding anything to the contrary in this Settlement Agreement, the releases contained in Section V herein do not extend to any action or proceeding to enforce or defend any rights or obligations arising after the Effective Date under this Agreement.

## VI.     PRELIMINARY APPROVAL AND NOTICE ORDERS; FINAL FAIRNESS HEARING

6.1.     Promptly after execution of this Settlement Agreement, Class Counsel will move the Court for entry of Preliminary Approval and Notice Orders in each matter to which the Settlement Agreement's application is contemplated, requesting, *inter alia*, preliminary approval of the Settlement and for a stay of all proceedings in the Litigation against the Protected Persons until the Court renders a final decision on approval of the Settlement. The motions shall include (a) the proposed Preliminary Approval Orders in the form attached as Exhibit A.1 hereto; (b) the proposed forms of Notice of the Settlement to Class Members substantially in the form of Exhibits A.2 and A.3 hereto; and (c) proposed Final Approval Orders and Judgments finally approving the Settlement in the form attached as Exhibit A.4 hereto.

6.2.     After dissemination of the Notice in accordance with the Preliminary Approval and Notice Orders, Class Counsel will move the Court for Final Approval Orders and entry of the Judgments,

   (a)     certifying the settlement Classes, and, fully and finally approving the Settlement contemplated by this Agreement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

   (b)     finding that the notice given to Class Members as contemplated in section IV.A, above, constitutes the best notice practicable

Settlement Agreement                                    18

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 21 of 37   Page ID
#349
Case 2:10-cv-05484-GW -JCG   Document 43-2   Filed 12/03/10   Page 21 of 76   Page ID
#:368

under the circumstances and complies in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

       (c)      directing that the Litigation be dismissed with prejudice as to Protected Persons and, except as provided for herein, without costs;

       (d)      discharging and releasing the Protected Persons from all Released Claims;

       (e)      permanently barring and enjoining the institution and prosecution, by Plaintiffs and the Class Members, of any other action against the Protected Persons, in any court, asserting any Released Claims;

       (f)      reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

       (g)      determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing entry of a final judgment as to defendants in the Litigation; and

       (h)      containing such other and further provisions consistent with the terms of this Agreement to which the parties expressly consent in writing.

6.3.      The Parties will request that the Court hold a hearing, at least ninety (90) days after Defendants serve the appropriate state and federal officials with proper notice of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on whether the Settlement should be granted final approval and whether Class Counsels' Fee Application should be granted.

6.4.      Following dissemination of the Notice as provided in the Preliminary Approval and Notice Orders, Class Members will have the right to opt out of the Settlement in accordance with the procedures set forth in the Notice. Any right to opt out shall be personal to the Class Member and shall not be assignable.

6.5.      In the event that 3,000 or more Class Members opt out of the Settlement, Defendants and the Undertaking Parties will be entitled at their sole option to void, nullify, terminate, and/or rescind the Settlement Agreement. Such option must be exercised collectively

Case 8:10-cv-01256-GW -JCG Document 26-2 Filed 03/09/11 Page 22 of 37 Page ID
#:359
Case 2:10-cv-05484-GW -JCG Document 45-2 Filed 12/03/10 Page 22 of 76 Page ID
#:369

by all Defendants and Undertaking Parties at least fourteen (14) calendar days before the final fairness hearing on the approval of the Settlement.

## VII.    OPT-OUT AND OBJECTIONS

7.1      Any Person may opt out of the Class at any time during the period of time approved by the Court and as will be outlined in the Court-approved Notice. Opt-outs must be post-marked by a date approved by the Court and specified in the Notice. In order to exercise the right to opt out, the Person seeking to opt-out must complete and return a request for exclusion to the claims administrator during the opt-out period. Except for those Persons who have properly opted out, all Class Members will be bound by this Settlement and the Judgment to be entered following final approval of this Settlement Agreement. Any Person who elects to opt out of the Settlement Class shall not (i) be bound by any orders or Judgment entered in this Litigation; (ii) be entitled to relief under this Settlement; (iii) gain any rights by virtue of this Settlement; or (iv) be entitled to object to any aspect of this Settlement. Any request for exclusion must be personally signed by the Person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed.

7.2      Any Class Member who intends to object to this Settlement must include his/her name and address, include all arguments, citations, and evidence supporting the objection and that they are a member of the Class, and provide a statement whether the objector intends to appear at the final fairness hearing, either with or without counsel. An objection will be considered submitted if mailed to the Court, to Class Counsel and/or to any Defendant's Counsel. Should an objection be mailed to Class Counsel or a Defendant's Counsel, such counsel shall send copies to other counsel and to the Court. It shall be the objector's responsibility to ensure receipt of any objection by the Court, Class Counsel or Defendants' Counsel. Objections must be post-marked by a date approved by the Court and specified in the Notice. Any Class Member who fails to timely file a written objection and notice of his or her intent to appear at the fairness hearing pursuant to this paragraph or as detailed in the Notice, shall not be permitted to

object to this Settlement at the fairness hearing, and shall be foreclosed from seeking any review of this Settlement by appeal or other means.

## VIII. **CONDITIONS**

8.1.    The Effective Date of this Settlement Agreement is conditioned upon the occurrence of all of the following events:

(a)    The Court enters the Preliminary Approval and Notice Orders in each of the respective matters to which this Settlement Agreement applies;

(b)    Defendants and the Undertaking Parties do not exercise their option under subsection 6.5 herein to void, nullify, terminate, and/or rescind the Settlement Agreement;

(c)    The Court enters the Judgment, providing, among other things, that the Class is certified for settlement purposes, that there has been adequate and sufficient notice of the Settlement to the Class, and that the terms and conditions of the Settlement are fair, reasonable, and adequate as a settlement of the claims of the Class in the Litigation;

(d)    The Judgment becomes Final;

(e)    The Litigation is dismissed with prejudice as to Defendants and the Protected Persons; and

(f)    The Representative Plaintiffs and all Class Members release Defendants and all Protected Persons from the Released Claims.

8.2.    In the event that any one or more of these conditions is not met, this Settlement Agreement will be of no force or effect, and the Parties will be deemed to be in the same position as they occupied prior to entering into this Settlement Agreement, without waiver of any rights, claims or defenses, unless the Parties mutually agree in writing to proceed with this Agreement.

8.3.    If the Court does not enter the Preliminary Approval and Notice Orders, substantially in the form of Exhibit A.1 hereto, the Final Approval Orders and Judgments, substantially in the form of Exhibit A.4 hereto, or if the Court enters Final Approval Orders and Judgments and appellate review is sought in a matter and, on such review, the Final Approval

Settlement Agreement                    21

Order and Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be cancelled and terminated as to such matter, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of receipt of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order or the Final Approval Order and Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Plaintiffs and the Class Members by Class Plaintiffs' Counsel. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party. Without limiting the foregoing, any Defendant shall have, in its sole and absolute discretion, the option to withdraw from the Settlement in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of all Released Claims against it and/or any Undertaking Party with which it is affiliated.

8.4.    If this Settlement Agreement is not finally approved for any reason or fails to become effective or Final in accordance with its terms, the Settlement Fund, less any outstanding Administrative Costs incurred or due and owing, and any amounts incurred or due and owing in connection with taxes or tax expenses provided for herein, will revert entirely to defendants Quantcast and Clearspring.

8.5.    If a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy) or a trustee, receiver, or conservator is appointed under any similar laws, and if a final order of a court of competent jurisdiction is entered determining that payments by that Defendant pursuant to the Settlement are a preference, voidable or fraudulent transfer, or similar transaction, then the releases given and Judgment entered in favor of that Defendant pursuant to this Settlement Agreement will be null and void, but all other releases,

Settlement Agreement                    22

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 25 of 37   Page ID
#:353
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 25 of 76   Page ID
#:372

including releases in favor of Protected Persons who contracted with the Defendant in bankruptcy, will retain their full force and effect.

## IX.    MISCELLANEOUS PROVISIONS

9.1.    The Parties acknowledge that it is their intent to consummate this Settlement Agreement, and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish such terms and conditions.

9.2.    The Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation and the Released Claims. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.

9.3.    The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether an application for attorneys' fees and expenses has been submitted to the Court or resolved.

9.4.    Neither this Settlement Agreement, the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement is or may be deemed to be an admission of, or evidence of: (i) the validity of any Released Claims; (ii) any wrongdoing or liability of any Defendant or Undertaking Party; or (iii) any fault or omission of any Defendant or Undertaking Party in any civil, criminal, or other proceeding in any court, administrative agency, or other tribunal. Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that any of the Protected Persons may file this Settlement Agreement or the Judgment, in any action that may be brought against them, in order to support any defense or counterclaim, including without limitation those based on principles of *res*

Settlement Agreement                          23

*judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5.    All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference. Any inconsistency between this Settlement Agreement and the Exhibits attached hereto shall be resolved in favor of this Settlement Agreement.

9.6.    The Parties acknowledge and agree that this Settlement Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties, that they have not executed this Settlement Agreement in reliance on any promise, representation, inducement, covenant, or warranty except as expressly set forth herein, and that this Settlement Agreement supersedes all other prior statements or agreements, whether oral or written, to the extent any provision hereof is inconsistent with any such prior oral or written statements or agreements.

9.7.    This Settlement Agreement may not be amended except by a writing executed by all Parties hereto or their respective successors-in-interest.

9.8.    The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement and over any disputes arising under this Settlement Agreement, and all Parties hereby submit to the jurisdiction of the Court for such purposes.

9.9.    Each Party represents and warrants to all other Parties that such Party: (a) was represented by attorneys of the Party's choosing in connection with the execution of this Settlement Agreement; (b) has read and understood all aspects of this Settlement Agreement and all of its effects; and (c) has executed this Settlement Agreement as a voluntary act of the Party's own free will and without any threat, force, fraud, duress, or coercion of any kind.

9.10.    Class Counsel and Representative Plaintiffs represent and warrant that Class Counsel is expressly authorized by the Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Settlement Agreement to effectuate its terms, and is expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class.

Settlement Agreement                                    24

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 27 of 37   Page ID
#:355
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 27 of 76   Page ID
#:374

9.11.   If any provision of this Settlement Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement Agreement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement Agreement or, if that proves unavailing, either Party can terminate the Settlement Agreement without prejudice to any Party.

9.12.    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Class Counsel shall be binding upon all Class Members.

9.13.   This Settlement Agreement will be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity will not be interpreted against any one Party because of the manner in which this Settlement Agreement was drafted or prepared.

9.14.   The headings used in this Settlement Agreement are for convenience only and will not be used to construe its provisions.

9.15.   This Settlement Agreement may be executed by facsimile and in any number of counterparts, all of which will be construed together and will constitute one document.

9.16.    This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

9.17.   To the extent necessary, the Parties agree to submit any disputes relating to the substance or wording of this Settlement Agreement or the terms or content of the Settlement Agreement to the Mediator. If the Mediator is unable to resolve the dispute, then the dispute will be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement Agreement.

Case 8:10-cv-01256-GW  -JCG   Document 26-2   Filed 03/09/11   Page 28 of 37   Page ID
#:356
Case 2:10-cv-05484-GW  -JCG   Document 45-2   Filed 12/03/10   Page 28 of 76   Page ID
#:375

9.18.   This Settlement Agreement will be governed by, and construed in accordance with, the laws of the State of California.

9.19.   Each Person executing this Settlement Agreement as Class Counsel or Defense Counsel hereby warrants that such Person has the full authority to make any and all representations or warranties made in this Settlement Agreement, to agree to all terms and conditions of this Settlement Agreement, and to execute this Settlement Agreement.

9.20.   The Parties and their counsel shall keep confidential the terms of this Settlement Agreement until such time as they mutually agree on the content and timing of a joint press release announcing the Settlement and actually issue such release, or until Plaintiffs file a motion for preliminary approval of the Settlement pursuant to subsection 6.1 above, whichever is sooner. Plaintiffs will provide Defendants and the Undertaking Parties with at least one business day's notice of the date on which they intend to file a motion for preliminary approval of the Settlement. The Parties agree that following the joint press release, if issued, no Party will make any statement contrary thereto. Notwithstanding the foregoing, prior to the time that such press release is issued or Plaintiffs file a motion for preliminary approval of the Settlement pursuant to subsection 6.1 above, whichever is sooner, the Parties and their counsel may disclose the fact of such settlement, and Defendants and the Undertaking Parties may disclose the terms of this Settlement Agreement to their accountants, financial, tax and legal advisors, contractual counter-parties or parties with whom they are contemplating contracting, and such other Persons as required to comply with any obligations or requirements that may exist under applicable federal and state tax or securities laws.

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 29 of 37   Page ID
Case 2:10-cv-05484-GW -JCG   Document #357   Filed 12/03/10   Page 29 of 76   Page ID
#:376

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: 12 - 3 - , 2010          COOLEY LLP

_Michael G Rhodes_
Michael G. Rhodes
101 California Street, 5th Floor
San Francisco, CA 94111
Attorneys for Defendant
Clearspring Technologies, Inc.


Dated: _____, 2010          DURIE TANGRI LLP


_____
Michael H. Page
217 Leidesdorff Street
San Francisco, CA 94111
Attorneys for Defendant Quantcast Corp.


Dated: _____, 2010          DEBEVOISE & PLIMPTON LLP


_____
Jeffrey S. Jacobson
919 Third Avenue
New York, NY 10022
Attorneys for Defendants American Broadcasting
Companies, Inc., ESPN, Inc., Fox Entertainment
Group, Inc., MTV Networks, MySpace, Inc., Walt
Disney Internet Group, Soapnet, LLC and
Defendants/Undertaking Parties Hulu, LLC, JibJab
Media, Inc., NBC Universal, Inc. and Scribd, Inc.

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 30 of 37   Page ID
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 30 of 76   Page ID
#:358
#:377

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: _____, 2010          COOLEY LLP

                                       _____
                                       Michael G. Rhodes
                                       101 California Street, 5th Floor
                                       San Francisco, CA 94111
                                       Attorneys for Defendant
                                       Clearspring Technologies, Inc.


Dated: _Dec. 3_____, 2010            DURIE TANGRI LLP

                                       _____
                                       Michael H. Page
                                       217 Leidesdorff Street
                                       San Francisco, CA 94111
                                       Attorneys for Defendant Quantcast Corp.


Dated: _____, 2010          DEBEVOISE & PLIMPTON LLP

                                       _____
                                       Jeffrey S. Jacobson
                                       919 Third Avenue
                                       New York, NY 10022
                                       Attorneys for Defendants American Broadcasting
                                       Companies, Inc., ESPN, Inc., Fox Entertainment
                                       Group, Inc., MTV Networks, MySpace, Inc., Walt
                                       Disney Internet Group, Soapnet, LLC and
                                       Defendants/Undertaking Parties Hulu, LLC, JibJab
                                       Media, Inc., NBC Universal, Inc. and Scribd, Inc.

Settlement Agreement                   27

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 31 of 37   Page ID
Case 2:10-cv-05484-GW -JCG   Document 45-2   Filed 12/03/10   Page 31 of 76   Page ID
#:359
#:378

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: _____, 2010          COOLEY LLP

                                       _____
                                       Michael G. Rhodes
                                       101 California Street, 5th Floor
                                       San Francisco, CA 94111
                                       Attorneys for Defendant
                                       Clearspring Technologies, Inc.


Dated: _____, 2010          DURIE TANGRI LLP

                                       _____
                                       Michael H. Page
                                       217 Leidesdorff Street
                                       San Francisco, CA 94111
                                       Attorneys for Defendant Quantcast Corp.


Dated: December 3, 2010               DEBEVOISE & PLIMPTON LLP

                                       _____
                                       Jeffrey S. Jacobson
                                       919 Third Avenue
                                       New York, NY 10022
                                       Attorneys for Defendants American Broadcasting
                                       Companies, Inc., ESPN, Inc., Fox Entertainment
                                       Group, Inc., MTV Networks, MySpace, Inc., Walt
                                       Disney Internet Group, Soapnet, LLC and
                                       Defendants/Undertaking Parties Hulu, LLC, JibJab
                                       Media, Inc., NBC Universal, Inc. and Scribd, Inc.


Settlement Agreement                          27

Case 8:10-cv-01256-GW -JCG Document 26-2 Filed 03/09/11 Page 32 of 37 Page ID
#:369
Case 2:10-cv-05484-GW -JCG Document 43-2 Filed 12/03/10 Page 32 of 76 Page ID
#:379

Dated: _December 3_ 2010       MORRISON & FOERSTER LLP

_____
Sherman W. Kahn
1290 Avenue of the Americas
New York, NY 10104-0050
Attorneys for Defendant Warner Bros. Records Inc.
and Undertaking Party Warner Music Inc.


Dated: _____, 2010     GREENBERG TRAURIG LLP


_____
Ian C. Ballon
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Attorneys for Defendant Demand Media, Inc.


Dated: _____, 2010     VIACOM INC.


_____
By: Michael Fricklas
Executive Vice President,
General Counsel and Secretary


Dated: _____, 2010     THE WALT DISNEY COMPANY


_____
By: Marsha Reed
Vice President, Governance Admin. &
Assistant Secretary


Dated: _____, 2010     NEWS CORPORATION


_____
By: Ellen Agress
Senior Vice President and Deputy
General Counsel


Settlement Agreement               28

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 33 of 37   Page ID
#:361
Case 2:10-cv-05484-GW -JCG   Document 49-2   Filed 12/03/10   Page 33 of 76   Page ID
#:380

Dated: _____, 2010          MORRISON & FOERSTER LLP

                                       _____
                                       Sherman W. Kahn
                                       1290 Avenue of the Americas
                                       New York, NY 10104-0050
                                       Attorneys for Defendant Warner Bros. Records Inc.
                                       and Undertaking Party Warner Music Inc.

Dated: 12 / 03 , 2010                  GREENBERG TRAURIG LLP

                                       _____
                                       Ian C. Ballon
                                       2450 Colorado Avenue, Suite 400E
                                       Santa Monica, CA 90404
                                       Attorneys for Defendant Demand Media, Inc.

Dated: _____, 2010          VIACOM INC.

                                       _____
                                       By: Michael Fricklas
                                       Executive Vice President,
                                       General Counsel and Secretary

Dated: _____, 2010          THE WALT DISNEY COMPANY

                                       _____
                                       By: Marsha Reed
                                       Vice President, Governance Admin. &
                                       Assistant Secretary

Dated: _____, 2010          NEWS CORPORATION

                                       _____
                                       By: Ellen Agress
                                       Senior Vice President and Deputy
                                       General Counsel

Settlement Agreement                   28

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 34 of 37   Page ID
Case 2:10-cv-05484-GW -JCG   Document 48-2   Filed 12/03/10   Page 34 of 76   Page ID
#:362
#:381

Dated: _____, 2010          MORRISON & FOERSTER LLP

                                       _____
                                       Sherman W. Kahn
                                       1290 Avenue of the Americas
                                       New York, NY 10104-0050
                                       Attorneys for Defendant Warner Bros. Records, Inc.
                                       and Undertaking Party Warner Music Inc.


Dated: _____, 2010          GREENBERG TRAURIG LLP

                                       _____
                                       Ian C. Ballon
                                       2450 Colorado Avenue, Suite 400E
                                       Santa Monica, CA 90404
                                       Attorneys for Defendant Demand Media, Inc.


Dated: December 3__, 2010             VIACOM INC.

                                       _____
                                       By: Michael Fricklas
                                       Executive Vice President,
                                       General Counsel and Secretary


Dated: _____, 2010          THE WALT DISNEY COMPANY

                                       _____
                                       By: Marsha Reed
                                       Vice President, Governance Admin. &
                                       Assistant Secretary


Dated: _____, 2010          NEWS CORPORATION

                                       _____
                                       By: Ellen Agress
                                       Senior Vice President and Deputy
                                       General Counsel


Settlement Agreement                           28

Case 8:10-cv-01256-GW  -JCG   Document 26-2   Filed 03/09/11   Page 35 of 37   Page ID
Case 2:10-cv-05484-GW  -JCG   Document #:363   Filed 12/03/10   Page 35 of 76   Page ID
#:382

Dated: _____, 2010          MORRISON & FOERSTER LLP

                                      _____
                                      Sherman W. Kahn
                                      1290 Avenue of the Americas
                                      New York, NY10104-0050
                                      Attorneys for Defendant Warner Bros. Records, Inc.
                                      and Undertaking Party Warner Music Inc.


Dated: _____, 2010          GREENBERG TRAURIG LLP

                                      _____
                                      Ian C. Ballon
                                      2450 Colorado Avenue, Suite 400E
                                      Santa Monica, CA 90404
                                      Attorneys for Defendant Demand Media, Inc.


Dated: _____, 2010          VIACOM INC.

                                      _____
                                      By: Michael Fricklas
                                      Executive Vice President,
                                      General Counsel and Secretary


Dated: _December 3_, 2010            THE WALT DISNEY COMPANY

                                      _____
                                      By: Marsha Reed
                                      Vice President, Governance Admin. &
                                      Assistant Secretary


Dated: _____, 2010          NEWS CORPORATION

                                      _____
                                      By: Ellen Agress
                                      Senior Vice President and Deputy
                                      General Counsel


Settlement Agreement                 28

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 36 of 37   Page ID
Case 2:10-cv-05484-GW -JCG   Document #:364   Filed 12/03/10   Page 36 of 76   Page ID
#:383

Dated: _____, 2010          MORRISON & FOERSTER LLP

_____

Sherman W. Kahn
1290 Avenue of the Americas
New York, NY10104-0050
Attorneys for Defendant Warner Bros. Records, Inc.
and Undertaking Party Warner Music Inc.


Dated: _____, 2010          GREENBERG TRAURIG LLP

_____

Ian C. Ballon
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Attorneys for Defendant Demand Media, Inc.


Dated: _____, 2010          VIACOM INC.

_____

By: Michael Fricklas
Executive Vice President,
General Counsel and Secretary


Dated: _____, 2010          THE WALT DISNEY COMPANY

_____

By: Marsha Reed
Vice President, Governance Admin. &
Assistant Secretary


Dated: Dec. 3 _____, 2010          NEWS CORPORATION

_____

By: Ellen Agress
Senior Vice President and Deputy
General Counsel

Case 8:10-cv-01256-GW -JCG   Document 26-2   Filed 03/09/11   Page 37 of 37   Page ID
#:365
Case 2:10-cv-05484-GW -JCG   Document 48-2   Filed 12/03/10   Page 37 of 76   Page ID
#:384

Dated: <u>Dec. 3</u>, 2010                KAMBERLAW, LLC

_____

Scott A. Kamber
David A. Stampley 100 Wall Street, 23rd Floor
New York, NY 10005
Class Counsel, on behalf of Plaintiffs
individually and on behalf of the Class

Settlement Agreement                    29