# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | SACV 10-1256-GW(JCGx) |
| Date | April 28, 2011 |
| Title | *Genevive La Court, et al. v. Specific Media, Inc.* |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
Scott Kamber

Attorneys Present for Defendants:  
Joshua A. Jesson

**PROCEEDINGS:** DEFENDANT SPECIFIC MEDIA, INC.'S MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (filed 02/17/11);

STATUS CONFERENCE

The tentative circulated is attached and adopted as the Court's final ruling. Defendant Specific Media, Inc.'s Motion to Dismiss First Amended Consolidated Class Action Complaint is **granted with leave to amend.** Plaintiffs will have until May 17, 2011 to **manually** file the Second Amended Complaint.

The status conference is continued to **June 20, 2011 at 8:30 a.m.** Defendants may use June 20, 2011 as a dispositive motion hearing date.

: 08

Initials of Preparer  JG

*LaCourt v. Specific Media*, Case No. CV-10-1256
Tentative Ruling on Motion to Dismiss

## I. Introduction

This case is one of a constellation of class action lawsuits pending before this Court which arise from the alleged use of Adobe Flash local shared objects ("LSOs" or "Flash Cookies") to track class members' use of the Internet without their knowledge or consent. Several consolidated cases related to this action - Valdez v. Quantcast Corporation, CV-10-5484-GW(JCGx); Aguirre v. Quantcast Corporation, CV 10-5716-GW(JCGx); White v. Clearspring Technologies, Inc., CV-10-5948-GW(JCGx); Intzekostas v. Fox Entertainment Group, CV-10-6586-GW(JCGx); and Davis v. VideoEgg, Inc., CV-10-7112 - GW(JCGx) - have been resolved in a global settlement agreement which was preliminarily approved by this Court on March 30, 2011. In the present action, Defendant Specific Media, Inc. ("Specific Media") moves the Court for an Order dismissing the First Amended Consolidated Class Action Complaint pursuant to (inter alia) Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Background

"Specific Media is an online third-party ad network that earns its revenue by delivering targeted advertisements." First Amended Consolidated Class Action Complaint ("FACC") ¶ 8. It uses HTTP cookies containing unique identifiers and browsing history information to track users in order to create behavioral profiles to target specific categories of ads at different users. See id. at ¶ 13. Allegedly, Specific Media used LSOs in order to circumvent the privacy and security controls of users who had set their browsers' to block third-party HTTP cookies, block Specific Media's HTTP cookies, or who deleted Specific Media's HTTP cookies. Id. at ¶ 17. In addition, it used LSOs to restore or "re-spawn" Specific Media HTTP cookies that were deleted by users. Id. at ¶ 18.

Plaintiff Genevieve LaCourt and the six other plaintiffs (hereinafter, "Plaintiffs") purport to represent a class consisting of "[a]ll persons residing in the United States who, during the Class Period, used any web browsing program on any device to access web pages during which time and related to which Specific Media stored Adobe Flash local shared objects (LSOs) on such persons' computers." Id. at ¶ 35. Each of the named plaintiffs allege that they "are persons who have set the privacy and security controls on their browsers to block third-party cookies and/or who periodically delete third-party cookies," and that they each had a "Flash cookie" installed on their computer by Specific Media without their notice or consent. Id. at ¶¶ 21, 24.

Plaintiffs allege that they sought to maintain the secrecy and confidentiality of the information obtained by Defendant through the use of LSOs. Id. at ¶ 30. They further allege that "Defendant's conduct has caused economic loss to Plaintiffs and Class Members in that their personal information has discernable value, both to Defendant and to Plaintiffs and Class Members, and of which Defendant has deprived Plaintiffs and Class Members and, in addition, retained and used for its own economic benefit." Id. at ¶ 38.

Based on the above allegations, Plaintiffs have asserted the following claims for relief on

behalf of themselves and the class: (1) Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Violation of Computer Crime Law, Cal. Penal Code § 502; (3) Violations of Invasion of Privacy Act, Cal. Penal Code § 630; (4) Violation of Consumer Legal Remedies Act, Cal. Civ. Code § 1750; (5) Unfair Competition, Cal. Bus. and Prof. Code § 17200; (6) Trespass to Personal Property/Chattel; and (7) Unjust Enrichment.

### III. Legal Standard
#### A. Rule 12(b)(1)

A challenge to standing under Article III "pertain[s] to a federal court's subject-matter jurisdiction" and is therefore "properly raised in a motion under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). Once a party has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party opposing the motion has the burden of establishing that the Court has jurisdiction. See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

#### B. Rule 12(b)(6)

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59; see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co., 588 F.3d 659, 667 (9th Cir. 2009) (conforming that Twombly pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

In deciding a 12(b)(6) motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and

must accept all factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. See Barker v. Riverside County Office of Ed., 584 F.3d 821, 824 (9th Cir. 2009); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. See Iqbal, 129 S.Ct. at 1951; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**IV. Analysis**
    **A. Article III Standing**

Defendant first argues that the Court lacks subject matter jurisdiction over this action because Plaintiffs have failed to allege "the irreducible constitutional minimum of standing" required by Article III of the Constitution, i.e., the existence of an actual case or controversy. Krottner v. Starbucks Corp., 628 F.3d 1139, 1141 (9th Cir. 2010) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)),. In order to establish standing, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). Here, Specific Media challenges only Plaintiffs' ability to satisfy the first of these requirements, asserting that Plaintiffs have failed to plausibly allege an "injury in fact."

        1. Plaintiffs have not alleged that any named Plaintiff was affected by Defendant's alleged conduct.

Specific Media argues that Plaintiffs, upon close reading of the Complaint, have not alleged that Specific Media ever actually tracked the online activity of any named plaintiff, or that Plaintiffs ever deleted any Specific Media browser cookies, or that Plaintiffs' browser cookies were ever "re-spawned" by Specific Media. Rather, the Complaint simply alleges that Specific Media installed Flash cookies on Plaintiffs' computers and then states that "Plaintiffs believe that, if they were to re-visit the websites on which Specific Media [Flash cookies] were set, or were to visit other websites on which Specific Media served online advertisements, the tracking devices would be used as substitutes for HTTP cookies and to re-spawn previously deleted cookies." FACC ¶ 25. Thus, Specific Media argues, to the extent that Plaintiffs have alleged any injury at all, it is one that is entirely conjectural, hypothetical, or speculative.

Plaintiffs' mere use of the subjunctive does not mean that they have not alleged an injury that is "imminent." The threat that Plaintiffs' previously deleted cookies will be re-spawned when they visit websites in the Specific Media's network is, potentially, a threat of imminent harm sufficient to satisfy the "injury in fact" requirement of standing. However, it is not clear that Plaintiffs have even alleged this. Plaintiffs assert, in a footnote to their opposition, that they have "indeed allege[d] that Specific Media installed LSOs to track [Plaintiffs'] online activities and that they deleted Specific Media browser cookies." Opp. 4 n.3. Except for the conclusory allegation at ¶ 1 ("Nature of the Case"), however, the portions of the FACC they cite, namely ¶¶ 13-19, describing the nature of Specific Media's alleged practices, do not specifically allege that

Plaintiffs themselves were affected by them. An inference might be drawn, but rather than invite an argument over the reasonableness of such an inference, Plaintiffs should have specifically alleged that they were affected by Defendant's alleged practices.

                    2. <u>Plaintiffs have not alleged an economic injury or harm to their computers.</u>

Even assuming Plaintiffs can allege that they were affected by Specific Media's alleged practices regarding Flash Cookies, an even more difficult question is whether they can allege that they were injured by them. In this respect, Plaintiffs' Opposition is surprisingly tepid. In addition to simply repeating the conclusory statements in their Complaint to the effect that Defendant's conduct has caused them to suffer an injury, Plaintiffs refer to a host of facts - including facts pertaining to the value of their personal information and to the supposedly deleterious effects that Defendant's LSOs had on Plaintiffs' computers - that are not contained in their Complaint at all.

The parties in their papers engage in a quasi-philosophical debate about the possible value of consumers' "personal information" on the Internet. Ultimately, the Court probably would decline to say that it is categorically impossible for Plaintiffs to allege some property interest that was compromised by Defendant's alleged practices.[1] The problem is, at this point they have not done so. Plaintiffs - who have more or less completely accepted Defendant's framing of the issue - make the problematic argument that "by taking and retaining [Plaintiffs'] personal information," i.e., their browsing history, Defendant has deprived Plaintiffs of this information's economic value. The theory underlying this assertion is presented by reference to a number of academic articles concerning the nature of "Internet business models . . . driven by consumers' willingness to supply data about themselves." Opp. 5:6-7. While the Court would recognize the viability in the abstract of such concepts as "opportunity costs," "value-for-value exchanges," "consumer choice," and other concepts referred to in the Opposition, what Plaintiffs really need to do is to give some particularized example of their application in this case.

Defendant aptly notes that the Complaint does not identify a single individual who was foreclosed from entering into a "value-for-value exchange" as a result of Specific Media's alleged conduct. Furthermore, there are no facts in the FACC that indicate that the Plaintiffs themselves ascribed an economic value to their unspecified personal information. Finally, even assuming an opportunity to engage in a "value-for-value exchange," Plaintiffs do not explain how they were "deprived" of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party.

In addition to the injury based on the supposed loss of their personal information, Plaintiffs also half-heartedly argue that they suffered harm to their computers "because Specific Media's installation of Flash LSOs circumvented and diminished the performance and capabilities of their computers." Opp. 9:18-20. If the loss of the ability to delete cookies counts[2] as

---

[1] Or, for that matter, some type of privacy interest. It is noted that at ¶ 26 of the FACC Plaintiffs allege that "Plaintiffs consider information about their online activities to be in the nature of confidential information that they protect from disclosure, including by periodically deleting cookies."

[2] There is a question as to whether that loss was temporary or permanent.

harm to Plaintiffs' computers, then maybe Plaintiffs have alleged some de minimis injury, but probably not one that would give rise to Article III standing. If Plaintiffs are suggesting that their computers' performance was compromised in some other way - a claim that was made in the first iteration of the Complaint but all but abandoned in the FACC - then they need to allege facts showing that this is true.

### 3. In re Doubleclick

At least one case, In re DoubleClick Privacy Litigation, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), has held - albeit not in the context of evaluating Article III standing - that website visitors do not suffer a cognizable "economic loss" from the collection of their data. In Doubleclick, the court rejected plaintiffs' arguments that they suffered economic damages for the purpose of stating a claim under the Computer Fraud and Abuse Act based on both (1) the economic value of their attention to DoubleClick's advertisements (which is not an argument that Plaintiffs in this case make) and (2) the value of the demographic information compiled by it through the use of browser cookies (which basically is). Id. at 524. In particular, the court wrote that "although demographic information is valued highly . . . the value of its collection has never been considered a economic loss to the subject." Id. at 525. While Plaintiffs attempt to distinguish DoubleClick on the ground they have alleged that they were deprived not of "mere demographic information," but "of the value of their personal data," it is not clear what they mean by this. Defendant observes that, if anything, the Plaintiffs in Doubleclick alleged that the defendant collected much more information than Specific Media supposedly collected in this case, including "names, e-mail addresses, home and business addresses, telephone numbers, searches performed on the Internet, Web pages or sites visited on the Internet and other communications and information that users would not ordinarily expect advertisers to be able to collect." Id. at 503.

Doubleclick, obviously, is not binding on this Court. Its reasoning at least suggests that the question of Plaintiffs' ability to allege standing is a serious one, however. It would be very difficult to conclude at this point that Plaintiffs have met their burden of establishing that this Court has subject matter jurisdiction. Specific Media goes too far, though, when in the introductory section of its opening brief it accuses Plaintiffs (and their lawyers) of bringing this action in bad faith.[3] Specific Media maintains that the practices of using LSOs to re-spawn browser cookies or to surreptitiously track computer users' visits to websites are utterly innocuous at the same time it denies engaging in them. All of the defendants in the related actions have disavowed such practices and have promised to take steps to prevent them. It is not obvious that Plaintiffs cannot articulate some actual or imminent injury in fact. It is just that at this point they haven't offered a coherent and factually supported theory of what that injury might be.

### B. Specific Causes of Action

In light of Plaintiffs' apparent inability to allege a basis for standing, a lengthy discussion

---

[3] Defendant's counsel would be instructed that lawyers should not, just as a matter of basic professionalism, accuse other lawyers of operating a "shakedown" operation unless they can completely support such accustions.

of the defects (many of which are related to the standing issue) of the specific causes of action alleged in the FACC would be an inefficient use of time. Some points would nevertheless be noted.

### 1. The CFAA

First, with respect to the CFAA, it is doubtful that Plaintiffs have the ability to state a claim under this statute. The CFAA permits a person that "suffers damage or loss" by reason of a violation of the CFAA, to "maintain a civil action against the violator" for damages and injunctive relief. 18 U.S.C. § 1030(g). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a system, or information." 18 U.S.C. § 1030(e)(8) (emphasis added). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Plaintiffs must claim economic loss or damages in an amount "aggregating at least $5,000 in value during any 1-year period to one or more individuals." 18 U.S.C. § 1030(c)(4)(A)(i)(I).[4] Defendant correctly observe that based on the above discussion regarding standing, Plaintiffs at the very least have failed to plausibly allege that they and the putative class - even in the aggregate - have suffered $5,000 in economic damages in a one year period as a result of Specific Media's actions.

There may well be other problems with this claim. For example, Plaintiffs contend that Specific Media violated Section (a)(5)(A) of the CFAA, but it is unclear whether Specific Media can be said to have "intentionally caus[ed] damage" to Plaintiffs' computers. 18 U.S.C. § 1030(a)(5)(A). These questions, however, are rather less likely to be able to be resolved at the pleading stage.

### 2. Computer Crime Law

California's Computer Crime Law does not have a minimum damages requirement. It permits civil suit if a computer system is accessed "without permission" by an outsider who thereby causes the victim some "damage or loss." Cal. Penal. Code § 502(e); see also Cal Penal Code §§ 502(c) and (b)(10). A discussion of the "damage or loss" requirement would be superfluous in light of Plaintiff's inability to demonstrate Article III standing. In addition to arguing that Plaintiffs cannot satisfy this requirement, Defendant also argues that Plaintiffs'

---

[4] Although Defendant does not dispute this point, it would appear somewhat questionable as to whether Plaintiffs may permissibly aggregate the claims of the entire class to reach the $5,000 limit. Section 1030(c)(4)(A)(i)(I) speaks of "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value." It is not clear that, in a civil action not brought by the United States, harm to different persons over a one-year period can be aggregated unless it relates to conduct affecting a single computer.

claims under this statute push the concept of access without permission further than the legislature intended. See, e.g., Chrisman v. City of Los Angeles, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer."). This, too seems to be a discussion for another day.

### 3. California's Invasion of Privacy Act

Plaintiffs assert that their Invasion of Privacy Act claims are being brought under California Penal Code § 631, which provides for the liability of "[a]ny person who . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." California Penal Code § 631. This statute's application to the conduct alleged in the FACC is far from obvious. Moreover, the federal Electronic Communications Privacy Act ("ECPA") arguably preempts Section 631 in the present context. See Bunnell v. Motion Picture Ass'n of Am., 567 F. Supp. 2d 1148, 1154-55 (C.D. Cal. 2007) (granting summary judgment in favor of defendant on plaintiff's Section 631 claim on the ground of field preemption).

### 4. Trespass to Chattels

The tort of trespass to chattels has been extended to cases where the plaintiff can establish that "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in [a] computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp. 2d 1058, 1069-1070 (N.D. Cal. 2000). The California Supreme Court has held that the tort "does not encompass . . . an electronic communication that neither damages the recipient computer system nor impairs its functioning." Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1347 (2003); see also id. at 1356 ("In the decisions so far reviewed, the defendant's use of the plaintiff's computer system was held sufficient to support an action for trespass when it actually did, or threatened to, interfere with the intended functioning of the system, as by significantly reducing its available memory and processing power."). Here, Plaintiffs have not alleged that the functioning of their computers was impaired (except in the trivial sene of being unable to permanently delete cookies) or would be imminently impaired to the degree that would enable them to plead the elements of the tort. Moreover, ebay, Inc., in which the defendant did not dispute that it had employed an automated computer program to search eBay's electronic database and continued to do so even after eBay demand that it stop, 100 F. Supp.2d at 1070, is readily distinguishable from this case on the question of authorization.

### 5. UCL and CLRA claims

Plaintiffs in their Opposition do not attempt to defend the legal viability of their CLRA claim, and Defendant appears to be correct that they cannot state such a claim. The UCL claim also is problematic, if for no other reason than Plaintiffs' apparent lack of standing. It is not completely clear, however, that Plaintiffs ultimately would not be able to state a viable claim under the "unfairness" prong of the UCL. If Plaintiffs intend to attempt to state a claim under the

"fraud" prong of the statute, they should be advised that Rule 9(b) would apply to such a claim.

### 6. Unjust Enrichment

This Court agrees with other courts in this district that "unjust enrichment is not an independent claim," and hence cannot serve as an independent cause of action. In re DirecTV Early Cancellation Litig., 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010).

## IV. Conclusion

For the above reasons, Defendant's Motion to Dismiss would be GRANTED WITH LEAVE TO AMEND.